## TOLEDO SCALE COMPANY *v.* COMPUTING SCALE COMPANY.

## FIDELITY & DEPOSIT COMPANY OF MARYLAND ET AL. *v.* COMPUTING SCALE COMPANY ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

Nos. 339 and 388.   Argued March 16, 1923.—Decided April 9, 1923.

1. Under the Act of September 6, 1916, this Court has no jurisdiction to review on certiorari the merits of a final decree entered by the Circuit Court of Appeals more than three months before the certiorari was applied for. P. 417.

2. Applications made to the Circuit Court of Appeals after it had affirmed a decree upholding a patent and ordering an accounting, and renewed upon the appeal from the accounting, whereby the defendant sought to reopen the case upon the ground of newly discovered evidence of prior discovery, manufacture, sale and use of the invention, were addressed to the sound discretion of the court and properly overruled where the failure to discover the evidence in time for the original hearing in the District Court was due to the applicant's lack of diligence. P. 419.

3. To justify setting aside a decree for fraud, extrinsic or intrinsic, it must appear that the fraud charged prevented the party complaining from making a full and fair defense. P. 421.

4. A party suing on a patent is under no duty to furnish his opponent evidence of an anticipation of the invention; nor does his silence concerning such evidence, unaccompanied by acts preventing the

opponent from finding and availing himself of it, constitute such
a fraud as will sustain a suit to enjoin execution of a decree en-
forcing the patent.  P. 423.

5. A decree of a District Court enjoining obedience to a decree of
a Circuit Court of Appeals of another circuit, upon an issue and
evidence of fraud, which, except for immaterial adjuncts of malice
and conspiracy, had been presented to and rejected by the latter
court as a basis for reopening the decree, held an unwarranted re-
view of that court's discretion, and not a decree founded on
extrinsic fraud.  P. 423.

6. The principle requiring due diligence in discovering and presenting
evidence, to avoid protraction of litigation, can not be set aside to
avoid hardship in a particular case.  P. 424. . .

7. The fact that the sureties on a supersedeas bond in a Circuit
Court of Appeals, and the banks with which their principal made
deposits for their indemnification, have been erroneously enjoined
from complying with that court's decree by a District Court of
another circuit, does not relieve them from obedience to a proper
and final order of the former court directing summary judgment
against them.  Their remedy is by appeal from the decree of the
District Court.  P. 425.

8. Under Jud. Code, § 262, the Circuit Court of Appeals has power
to issue all writs not specifically provided for by statute which
may be necessary to the exercise of its appellate jurisdiction.
P. 426.

9. To protect the execution of its decree, the Circuit Court of Ap-
peals may direct the District Court to enjoin a party from prosecut-
ing a suit in another jurisdiction.  *Id.*

10. A defeated party who seeks by a suit in another jurisdiction to
enjoin the sureties on his supersedeas bond and his opponent from
executing a decree of the Circuit Court of Appeals, is guilty of
contempt of that court which it may punish by directing the Dis-
trict Court to enter a summary decree for expenses occasioned
by such injunction suit and a reasonable attorney's fee.  P. 426.

281 Fed. 488, affirmed.

This case comes here by writs of certiorari to the Cir-
cuit Court of Appeals of the Seventh Circuit granted to
review the proceedings of that court in enforcement of
a final decree in a suit to enjoin infringement of a patent
and for an accounting of profits.  The patent had ex-
pired pending the litigation, but the accounting resulted

in a decree of the District Court for Northern Illinois for profits of more than $400,000 in favor of the Computing Scale Company against the Toledo Scale Company. The Circuit Court of Appeals, which had sustained the patent (208 Fed. 410) affirmed the decree for profits (279 Fed. 648), but stayed the mandate to permit an application to this Court for a writ of certiorari, which was denied January 9, 1922 (257 U. S. 657). On the same day, the Toledo Company, a corporation of New Jersey, filed a bill in the District Court for the Northern District of Ohio against the Computing Company, a corporation of Ohio, to enjoin it from enforcing the decree of the Circuit Court of Appeals of the Seventh Circuit on the ground that it was obtained by fraud. The Computing Scale Company filed an answer raising first a special plea to the jurisdiction and then responding on the merits denying fraud and pleading *res judicata*. The bill also made parties defendant the sureties on the supersedeas bond in the Circuit Court of Appeals, the Fidelity Deposit Company and the United States Fidelity and Guaranty Company, both corporations of Maryland, as well as three Toledo banks, citizens of Ohio, which held money deposited to the credit of the surety companies by the Toledo Company, as indemnity, and asked that they all be enjoined from in any way satisfying or aiding to satisfy the decree. The Computing Company then filed in the Circuit Court of Appeals a petition for a rule against the Toledo Company to show cause why it should not be enjoined from maintaining the bill in Ohio and why a summary decree should not issue against the sureties. Pending a hearing as to this rule, the Ohio court granted a temporary injunction restraining the Computing Scale Company, and the sureties and the banks as prayed by the Toledo Company. The Circuit Court of Appeals thereafter heard the petition for the rule to which the Toledo Com-

50947°—23——26

pany had made answer, in which by way of exhibit to its averments it set up as a defense the complete record in the injunction suit in Ohio. The Circuit Court of Appeals then made the order which is here for review. It reads as follows:

"We now receive from the Computing Company the certified copy of the Supreme Court's order denying Toledo Company's petition for writ of certiorari, and we direct the Clerk to file it in this cause.

"Unless the mandate which we now formulate be stayed on Toledo Company's motion filed within five days, the Clerk is directed to issue and transmit to the Court below the following mandate:

"(1) Enter of record our affirmance of the final decree on accounting.

"(2) Enjoin Toledo Company from further maintaining its Ohio bill and from filing elsewhere any similar bill.

"(3) Enter summary decree against the sureties on the supersedeas bonds for the amount due upon the accounting decree, including all costs in both courts, but not exceeding the penalties of the bonds.

"(4) Ascertain Computing Company's expenses in this matter, including reasonable attorney's fees, paid or incurred since the Supreme Court's denial of the petition for writ of certiorari on January 9th, 1922, and enter summary decree therefor against Toledo Company, but not against the sureties on the supersedeas bonds". 281 Fed. 488.

The patent, the subject of controversy in this case, was for an automatic computing scale issued to one Smith in September, 1895, and reissued April 28, 1896. It related to improvements in weighing scales wherein the weight and selling price could be seen by the weigher at a glance without mental calculation. It consisted of a pan weighing device attached to an indicator drum inside of a casing with a slot through which the figures on the drum as it

revolved in response to the effect of the weight would so coördinate with figures on the casing as to show the weight and correct price on the same line. The patentee in his specifications admitted that the general combination was an old one but said that the object of his improvement was to provide scales, extraordinarily sensitive to weights of small amount, and accurately registering them. He explained that an essential feature of the indicator drum in his improvement was that it should be made of very light material because scales of this kind theretofore would not weigh alike successively, due to the inertia of the revolving drum, the force required to operate it, and the difficulty of stopping, and so he had constructed his drum of a skeleton frame of aluminum with a periphery of a thin sheet of paper.

The claims in controversy were:

"5. An indicator-drum for weighing mechanism, consisting of a spindle provided with a plurality of skeleton frames of light material and secured to said spindle, and having secured to their peripheries a sheet of paper forming a cylinder."

"6. An indicator-drum for weighing mechanism consisting of a spindle provided with a plurality of skeleton disks or frames of thin aluminum having a sheet of paper extending around and secured to their peripheries to form a cylinder."

The Computing Scale Company and the Toledo Scale Company were competitors in business. The former had acquired the Smith patent by the purchase of the assets of the Boston Computing Scale Company, and before 1906 was manufacturing scales using the Smith cylindrical drum in competition with scales of the Toledo Company having a fan-shaped registering dial. There had been patent suits between them concerning other parts of the weighing mechanism than the indicator. Each had other patents in this field. In 1906, the Toledo Company

did not give up its fan-shaped scales, but began the manufacture of scales with an indicator drum of skeleton aluminum frame and paper periphery and so increased its sales of them that they ultimately constituted the larger part of its business. This led to two suits by the Computing Scale Company in 1907 against the Toledo Company in the District Court for the Northern District of Ohio. Nothing was done with them until the suit at bar was brought in the District Court for Northern Illinois in 1910. Then, as a condition of getting extension of time to take evidence herein, the Computing Scale Company was required by the court to dismiss the Ohio suits. In its answer to the bill in this case, filed in August, 1910, the Toledo Company alleged that the Smith patent and the claims 5 and 6 had been anticipated by a patent granted to one Phinney in 1870 and further averred anticipation by reason of prior public use and sale " by various persons at various places within the United States, and among others at Pawtucket, Rhode Island, by William H. Phinney, then and now, as defendant is informed and believes residing at said Pawtucket."

On the trial, the Toledo Company's expert testified that he had built a Phinney scale following the patent to Phinney, but that he could not get it to stop twice within an ounce of the same weight, and that a scale which would not weigh within a very small fraction of an ounce was not an instrument of precision and not a commercial article at all. It should be said that the specifications of the Phinney patent made no reference to the material of which the cylinder of the scales was to be made or its weight or the importance of those features. The District Court held that the fifth and sixth claims of the Smith patent were valid and this was affirmed by the Circuit Court of Appeals, April 15, 1913 (208 Fed. 410, 413), holding that Smith had put in the hands of the world's vendors of commodities the first usable computing scale,

that long before the " paper " art, including a patent to Phinney in 1870, had proposed to teach practical scale makers how to build automatic computing scales, but all attempts to make them were failures, that in the 25 years between Phinney and Smith the brightest and most skilful men had sought the necessarily tremendous commercial success of a reliable computing scale but had not found it until Smith had the happy conception that the lightest possible drum would secure the required accuracy of revolution and stopping.

On May 14, 1913, the Toledo Company made a motion in the Circuit Court of Appeals that the court include in its mandate affirming the decree of the District Court for an accounting, leave to rehear the cause and to permit the Toledo Company to introduce proof that computing scales had been made and sold and introduced into use by the patentee Phinney of Pawtucket, Rhode Island, which had a cylinder drum of light wood skeleton covered with thin paper and anticipated the drum of Smith. Three Phinney scales and thirteen supporting affidavits were introduced. These included one of the son of Phinney, the patentee, who had been with his father during his manufacture and sale of the scales until his death and who still lived at Pawtucket, of Phinney's widow, and also those of residents of Pawtucket who said they had bought and used the scales. The affidavits also disclosed that in a suit against the Federal Scale Company for infringement of the Smith patent brought by the Computing Scale Company in Philadelphia, which never came to trial, all this evidence had been taken and was on file. The three Phinney scales which were exhibits there had been in the custody of Church and Church who had been counsel for the Computing Scale Company in Philadelphia. It was also shown that the Computing Scale Company had three or four of these scales and drums in their possession at Dayton. It also appeared from young Phin-

ney's affidavit that the Boston Computing Company,
which owned the Smith patent and which subsequently
was bought out by the complainant Computing Scale
Company was trying to buy the scales which Phinney had.
The evidence tended to show that only twenty scales had
been made by Phinney, and that no scales were made
after 1895. The president of the Toledo Company in his
affidavit excused failure earlier to discover this evidence
by saying that the company made every effort to learn of
prior use. His counsel explained that he had been led
away from investigation into manufacture of Phinney
scales at Pawtucket which was not visited by agents of
the Toledo Company till after June, 1912, by the fact
that the model of the Phinney patent at the Patent Office
was of only a small one of solid wood and not of light
material, and that he only acquired knowledge of Phin-
ney's manufacture and use of scales with indicator drums
by accident after June, 1912, from counsel for defendant
in a suit brought by the Computing Company against the
Standard Company in 1911. There was no direct charge
in these 1913 affidavits that the Computing Scale Com-
pany was purchasing and gathering in these Phinney
scales to conceal them, but there were averments in the
affidavits which were only relevant to sustain such a
charge and were evidently inserted for that purpose. The
1913 motion for a rehearing was overruled by the Circuit
Court of Appeals.

The case went back for an accounting, and in 1917 the
Toledo Company took depositions of the witnesses whose
affidavits had been filed in 1913 and sought to use the
evidence to reduce the damages by showing what kind of
a scale might have been constructed by the Toledo Com-
pany without infringing the Smith patent, but the evi-
dence was not given weight for that purpose. The expert
of the Toledo Company in these depositions said he did
not test the Phinney scales of wood and paper cylinders

when they were in the custody of the Toledo Company because he did not think they would weigh properly. The District Court confirmed the master's report of the accounting and made a decree accordingly for $420,000. This was carried on appeal to the Circuit Court of Appeals, which affirmed it in October, 1921. 279 Fed. 648.

The Toledo Company at the same time again made a motion for leave to open up the case that it might introduce the evidence contained in the affidavits presented in May, 1913, and the depositions taken in 1917, and retry the issue of validity of the patent and show its invalidity by reason of the Phinney prior manufacture, sale and use. In brief of counsel urging the granting of this motion for the Toledo Company, it was said " To refuse to consider the evidence in the present record respecting the Phinney scale, as affecting the validity of the patent in suit, would be to permit the plaintiff to take advantage of essential facts known to it and unknown to the defendant or the court and its consequent imposition on both." In the subsequently filed petition for certiorari to this Court, counsel for the Toledo Company, in discussing this same issue, said,

" The affidavits further showed that plaintiff had full knowledge of the Phinney scales for more than ten years, that evidence and numerous samples of them had been introduced in a suit which plaintiff had brought at Philadelphia ten years earlier upon the reissued patent here in suit, that the prosecution of said suit had been abandoned because of such evidence and that plaintiff had suppressed and concealed such fact from the Court and defendant throughout the litigation in the present cause."

The motion to reopen the case was denied by the Circuit Court of Appeals. 279 Fed. 674. An application to review this October, 1921, decree by certiorari was made and was denied by this Court January 9, 1922. 257 U. S. 657.

At once, the Toledo Company filed its bill in the United States Court for the Northern District of Ohio, which is summarized by the Circuit Court of Appeals in its opinion. 281 Fed. 488, 491. It charged that since 1901, the Computing Company had formed a conspiracy with certain of its officers and agents to monopolize the computing scale business of the country and to put the Toledo Company out of business, that in 1902 it built and sold a dishonest scale that the Toledo Company exposed in circulars which the Computing Company sought, but failed, to enjoin, that this increased its malicious hatred toward the Toledo Company, that then the Toledo Company was making a fan scale which on the strength of patents held by it the Computing Company sought unsuccessfully to enjoin, but dismissed the suits without a trial, that in 1901 the Computing Company brought suit in the Eastern Pennsylvania District to enjoin the Federal Scale Company from infringing the Smith patent and introduced three Phinney scales as exhibits in evidence and depositions already referred to, that the suit was dismissed because the Computing Company was advised by counsel that the Phinney defense was dangerous, and that the exhibits were by stipulation retained by counsel for the Federal Company who lent them to counsel for Computing Company in whose custody they were until after the issue of validity had been decided in Chicago in favor of the Computing Company, that a suit brought against one Randall in Pennsylvania in 1901, and against the Standard Company in Wisconsin in 1911, on the Smith patent, by the Computing Company, had been dismissed after production of similar evidence of the Phinney prior use, that after 1906 the Computing Company secretly purchased and took into its possession all the Phinney scales it could get, being all of the twenty which Phinney ever made, except one or two then in the hands of users and except those in the Federal, Randall and Standard

suits, that these purchases were made in pursuance of the conspiracy, secretly and fraudulently for the purpose of preventing the Toledo Company and the District Court of Northern Illinois and the Circuit Court of Appeals of the Seventh Circuit from learning of the Phinney commercial practice, that the Toledo Company made diligent effort and investigation to find the Phinney commercial practice and also evidence of the Computing Company's fraudulent suppression of evidence thereof, that while Toledo Company had had knowledge of the Phinney commercial practice since 1913, it had no knowledge of Computing Company's fraudulent suppression thereof until December 20, 1921, which was after the affirmance of the accounting decree. The bill further averred that counsel for the Computing Company in 1913, in their brief on appeal from the District Court in this case, said that Phinney had never made a successful scale or put it on the market which the Computing Company knew to be false and that this deceived the Toledo Company and its counsel into damaging admissions in the Circuit Court of Appeals as to the material of which Phinney's scales were actually made.

This bill was supported by the same evidence used in the Seventh Circuit applications of 1913 and 1921 and also by the affidavit of one Koehne, who said that as an inventor of spring scales and to develop the same he had been in the employ of the Computing Company for a number of years, that he was privy to the conspiracy charged in the bill, but that the counsel employed to defend the various patent suits referred to in the bill were not, and that the manager of the Computing Company with whom he worked and talked was dead.

*Mr. George D. Welles* and *Mr. Frederick P. Fish,* with whom *Mr. Edward Rector, Mr. Harry W. Morgan, Mr. Thos. H. Tracy, Mr. Rathbun Fuller* and *Mr. Horace*

*Kent Tenney* were on the briefs, for Toledo Scale Company.

If the relief sought is against the enforcement of a judgment or decree which plaintiff alleges was obtained by reason of the fraud of the defendant, a United States District Court in which the bill is filed has full power to examine the bill, and the evidence offered in support of it, and to grant such relief as in its judgment the plaintiff is entitled to. The fact that the relief sought is to enjoin the defendant from taking any advantage from the judgment or decree of another court, in no wise affects the power of the District Court in which the bill is filed. The District Court has plenary jurisdiction to entertain such a bill, and to grant relief by way of injunction. *Insurance Co.* v. *Hodgeson,* 7 Cr. 332; *United States* v. *Throckmorton,* 98 U. S. 61; *Barrow* v. *Hunton,* 99 U. S. 80; *Johnson* v. *Waters,* 111 U. S. 640; *Chicago, R. I. & P. Ry. Co.* v. *Callicotte,* 267 Fed. 799; *Graver* v. *Faurot,* 76 Fed. 257; *Marshall* v. *Holmes,* 141 U. S. 589; *Simmons* v. *Southern Ry. Co.,* 236 U. S. 115; *Wells Fargo & Co.* v. *Taylor,* 254 U. S. 175; *Ocean Ins. Co.* v. *Fields,* 2 Story, 59; *Sayers* v. *Burkhardt,* 85 Fed. 246; *Dowagiac Co.* v. *McSherry Co.,* 155 Fed. 524; *Hendryx* v. *Perkins,* 114 Fed. 801; *Young* v. *Sigler,* 48 Fed. 182; *Guild* v. *Phillips,* 44 Fed. 461.

Upon such a bill, the court in which it is pending may grant an injunction at any time; the fact that an appeal or writ of error from the fraudulent judgment is pending in a higher court, and that the appellate jurisdiction of the latter has therefore attached, does not affect the right of the party to file a bill, or of the court to grant an injunction. *Parker* v. *The Judges,* 12 Wheat. 561; *Dowagiac Co.* v. *McSherry Co.,* 155 Fed. 524.

A suit to enjoin enforcement of a judgment for extrinsic fraud of the successful party in obtaining it may be brought and maintained without leave of any court; *Hendryx* v. *Perkins, supra; Dowagiac Co.* v. *McSherry*

*Co., supra; Ritchie* v. *Burke,* 109 Fed. 16; *Griggs* v. *Gear,* 8 Gillman, 3; *Farwell* v. *Great Western Tel. Co.,* 161 Ill. 522.

The defendant cannot, by proceedings in mandamus or prohibition, either in the Circuit Court of Appeals or in the Supreme Court, or otherwise, control the discretion of the District Court in its decision of the question presented in such a bill of complaint. Neither mandamus nor prohibition will lie where there is a plain and adequate remedy by way of appeal. *Ex parte Chicago, R. I. & P. Ry. Co.,* 255 U. S. 273; *Huntington* v. *Laidley,* 176 U. S. 668.

A complete answer to the claim that the Court of Appeals could properly enjoin the Ohio proceedings is found in *Kline* v. *Burke Construction Co.,* 260 U. S. 226; and *Essanay Film Mfg. Co.* v. *Kane,* 258 U. S. 358.

The Circuit Court of Appeals would have had no jurisdiction to entertain a bill of review based upon the fraud of the successful party in secreting and suppressing evidence to support the defeated party's defense. *Dowagiac Co.* v. *McSherry Co.,* 155 Fed. 524; *Hendryx* v. *Perkins,* 114 Fed. 801; *Hill* v. *Phelps,* 101 Fed. 650; Simpkins, A. Federal Equity Suit, p. 607; 2 Beach, Mod. Eq. Pr., § 884; Daniell's Ch. Pl. & Pr., 5th ed., p. 1584; 1 Story, Eq. Pl., § 404; *Standard Oil Co.* v. *Missouri,* 224 U. S. 270.

The applications which were made to the Circuit Court of Appeals with respect to leave to apply to the lower court to receive newly discovered evidence were applications purely to the discretion of the Circuit Court of Appeals. If the Toledo Company at the time of making such applications had known of the fraud which had been perpetrated upon it by the Computing Company, and had set forth this fraud in these applications in an effort to move the discretion of the Circuit Court of Appeals to permit the newly discovered evidence to be received, and if the Circuit Court of Appeals had in fact then attempted

to pass upon the questions of materiality of such fraud and had held against the Toledo Company thereon, its decision would still have been purely discretionary and would not have been binding upon Toledo Company as *res judicata* or estoppel in its subsequent suit filed as a matter of right to restrain the enforcement of the judgment because of fraud.  *Metcalfe* v. *Williams,* 104 U. S. 95; *Oklahoma City* v. *McMaster,* 196 U. S. 529; *Bucki* v. *Atlantic Lumber Co.,* 116 Fed. 1; 2 Freeman on Judgments, § 511; *Farwell* v. *Great Western Tel. Co.,* 161 Ill. 522, 617; *Credits Commutation Co.* v. *United States,* 177 U. S. 311.

It seems clear that a discretionary application to an appellate court, supported only by such affidavits as the applicant may be fortunate enough to obtain and which that court may grant or deny in its wholly uncontrolled discretion, cannot, if denied, have the effect of adjudicating finally as between the parties that the fraud alleged was not committed or was immaterial or that relief against it is barred by laches.  A party who is defrauded has a right to a hearing in a court where he can subpoena witnesses and force them to testify whether they are willing to do so or not, and to have the issues determined in accordance with the rules of law and equity with a right of review if he feels aggrieved by the decision.  The Toledo Company has never had a day of this kind in court.

The orders denying the discretionary applications to the Circuit Court of Appeals were not final decrees and only a final decree amounts to *res judicata.*

Moreover, it should not be overlooked that the fraud of which the Toledo Company now complains was not in fact known to it, and hence was not set up or relied upon in its appeals to the discretion of the Circuit Court of Appeals, and that the fraud was still operative at the time of these applications and prevented the Toledo Company's making the full showing with respect to prior use, and any

showing as to fraud such as is now made in the District Court in Ohio.

Obviously a decree which it is claimed was obtained by fraud cannot operate as a bar to an investigation of the fraud. *Adair* v. *Cummins*, 48 Mich. 375; *Walker* v. *Day*, 8 Baxt. (Tenn.) 77.

And, by a parity of reasoning, a party whose only relief against a judgment obtained by fraud is a suit to enjoin its enforcement cannot be guilty of contempt of court in filing his suit for such an injunction.

It is submitted that the litigation in Ohio in no respect interferes with the exercise by the Circuit Court of Appeals for the Seventh Circuit of its appellate jurisdiction in the litigation in that circuit.

The Circuit Court of Appeals is a court of purely appellate jurisdiction. If it has power to issue or to direct the District Court below to issue an injunction with respect to a matter, it may do so only, if at all, by virtue of § 262, Jud. Code. The issuance of injunctions is specifically provided for by § 264. The specific provisions do not authorize the issuance of injunction by the Circuit Courts of Appeals. Probably they have no such power. *North Bloomfield* v. *United States*, 83 Fed. 2; *The Mamie*, 110 U. S. 742; *McClung* v. *Silliman*, 6 Wheat. 598.

If it be granted, however, that they may issue them when so " necessary " for the exercise of their appellate jurisdiction, nevertheless, if that court erroneously determines that a necessity exists when it does not exist, such determination should be reviewed and reversed by the Supreme Court. In the case at bar we submit it is clear that there was no necessity for the Circuit Court of Appeals to issue an injunction in aid of its appellate jurisdiction. All that remained for it to do to fully complete the exercise of its appellate jurisdiction in this case was to send its mandate to the District Court affirming the decree upon the accounting. When that had been done, its

exercise of its power and authority would have been complete.

The ordinary procedure, where it is claimed that vexatious litigation is being maintained by a defeated party, is to file a bill of complaint so alleging either as an ancillary bill in the District Court in which the original proceedings were had as in *Supreme Tribe of Ben-Hur* v. *Cauble,* 255 U. S. 356, or in some other District Court having jurisdiction of the parties, as in *Kessler* v. *Eldred,* 206 U. S. 285, and upon such bill of complaint and after a hearing and determination that the other suit is vexatious the District Court may issue an injunction. In the case at bar the Circuit Court of Appeals has substituted itself for the District Court as a trial court, and upon a petition filed before it, which was never before the District Court, has held that its action upon prior applications to it, which in turn were never before the District Court, are binding upon the parties and has directed the issuance of a mandate to the District Court below it to issue an injunction upon a matter which that District Court has never had before it.

We respectfully submit that the Circuit Court of Appeals, under the guise of informing itself " on the correctness and justice of the mandate to be entered," cannot substitute itself for a District Court and usurp the primary jurisdiction of that court in the manner in which it has been done in this case.

The Circuit Court of Appeals has not stated in terms that it has found the Toledo Company guilty of contempt, but it has attempted to punish it as for a civil contempt. It heard no evidence as to the good faith or lack of it on the part of the Toledo Company in beginning the suit in Ohio. The District Court in Ohio not only held that the suit was brought in good faith but that it was well founded after full hearing upon the motion for preliminary injunction.

The action of the Toledo Company in bringing the Ohio suit was not in contempt of the Circuit Court of Appeals. *Royal Trust Co.* v. *Washburn,* 139 Fed. 865.

The District Court in Ohio was right in granting the injunction. A party who obtains a judgment or decree by extrinsic fraud may be enjoined from enforcing such judgment or decree by any court of equity having jurisdiction of the parties. *Graver* v. *Faurot,* 76 Fed. 257; *Dowagiac Co.* v. *McSherry Co.,* 155 Fed. 524; *United States* v. *Throckmorton,* 98 U. S. 61; *Marshall* v. *Holmes,* 141 U. S. 589; *Wells Fargo & Co.* v. *Taylor,* 254 U. S. 175; *Chicago, R. I. & P. Ry. Co.* v. *Callicotte,* 267 Fed. 799; *Ocean Ins. Co.* v. *Fields,* 2 Story, 59; *Sayers* v. *Burkhardt,* 85 Fed. 246; *Young* v. *Sigler,* 48 Fed. 182; *Guild* v. *Phillips,* 44 Fed. 461.

The fraud upon which the Ohio injunction suit rests is that before the patent litigation was begun the Computing Company, for the purpose of preventing an adversary trial of the issues as to whether there had been an anticipation of its patent, gathered up and secreted the evidence bearing upon this point, and that it did this for the express purpose of depriving the Toledo Company of the opportunity of having an actual adversary trial of the issue as to whether Smith or Phinney made the first lightweight computing cylinder and for the express purpose of deceiving and misleading the courts as well as the Toledo Company. This conduct certainly was not conduct practiced during the course of an actual adversary trial of the issues joined.

In the patent suit in the District Court in Illinois, the Toledo Company was prevented by the fraudulent conduct of the Computing Company from fully and fairly presenting its side of the case.

The general rule applies to enjoining the enforcement of a decree on the merits in a patent suit obtained by extrinsic fraud by an original bill in another court of equity.

*Arrowsmith* v. *Gleason,* 129 U. S. 86; *Johnson* v. *Waters,*
111 U. S. 640.

The general rule applies to enjoining the enforcement
of a judgment or decree of one federal court by another
federal court, *Carver* v. *Jarvis-Conklin Co.,* 73 Fed. 9;
*Chapman & Co.* v. *Montgomery Water Power Co.,* 127
Fed. 839; *Kirk* v. *United States,* 124 Fed. 324; 130 Fed.
112; *Ralston* v. *Sharon,* 51 Fed. 702; and to enjoining the
enforcement of a decree of one court of equity by an-
other. *Graver* v. *Faurot,* 76 Fed. 257; *Dowagiac Co.* v.
*McSherry Co.,* 155 Fed. 524; *United States* v. *Throckmor-
ton,* 98 U. S. 61; *Toledo Scale Co.* v. *Computing Scale
Co.,* 281 Fed. 488; *Carver* v. *Jarvis-Conklin Co.,* 73 Fed.
9; *Ralston* v. *Sharon,* 51 Fed. 702.

The Circuit Court of Appeals erred in holding that the
fraud complained of in the District Court of Ohio is not
extrinsic fraud. *Graver* v. *Faurot,* 76 Fed. 267; *Chicago,
R. I. & Pac. Ry. Co.* v. *Callicotte,* 267 Fed. 799; *Marshall*
v. *Holmes,* 141 U. S. 589; *Arrowsmith* v. *Gleason,* 129
U. S. 86; *Johnson* v. *Waters,* 111 U. S. 640.  ·

The Circuit Court of Appeals erred in holding that it
had ever passed upon the question of fraud which is
raised in the Ohio case.

It was not until December, 1921, that the evidence of ·
the fraud now complained of came to the knowledge of
the Toledo Company. What the Circuit Court of Ap-
peals holds, therefore, is that the Toledo Company is
not now entitled to relief, notwithstanding the fraud of
the Computing Company, because of the fact that Toledo ·
Company had what the court regards as a clue to the
fraud of the Computing Company and did not follow it
up but instead engaged in a prolonged accounting contest.

This is not, and never has been the law. *Kilbourn*
v. *Sunderland,* 130 U. S. 505; *McIntire* v. *Pryor,* 173
U. S. 38.

The Circuit Court of Appeals erred in holding that its
refusal to grant the applications of the Toledo Company

for leave to apply to the District Court of Illinois for leave to introduce newly discovered evidence was a' final decree barring relief under the Ohio bill based on extrinsic fraud.

The Smith reissued patent in suit is invalid for lack of patentable invention over the prior art. It is completely anticipated by the Phinney commercial scales.

Claims 5 and 6 of the Smith reissued patent are invalid for the reason that they are claims for a different invention from that described and claimed as the patentee's invention in his original patent.

The plaintiff and the court neglected and refused to make, or to attempt to make, any apportionment of defendant's profits on its cylinder scales, and the award of its entire profits to plaintiff was erroneous.

*Mr. Charles Markell,* with whom *Mr. Edward Osgood Brown* and *Mr. Edwin J. Marshall* were on the brief, for Fidelity & Deposit Company of Maryland et al.

*Mr. John M. Zane,* with whom *Mr. Charles F. Morse* and *Mr. Drury W. Cooper* were on the briefs, for Computing Scale Company.

MR. CHIEF JUSTICE TAFT, after stating the case as above, delivered the opinion of the Court.

It is insisted by counsel for the petitioner that it is within our power and it is our duty on this writ to go into the merits of the issue of the validity of the Smith patent and of the correctness of the money decree for profits. We were asked to do this by an application for writ of certiorari which we denied January 9, 1922. 257 U. S. 657. The decree then sought to be reviewed was entered in October, 1921. The application for this second writ of certiorari which we are now considering was not made until May 22, 1922, more than three months after

the final decree in the Circuit Court of Appeals for the payment of profits. Section 6 of Act of September 6, 1916, c. 448, 39 Stat. 726, 727, directs—

"That no writ of error, appeal, or writ of certiorari intended to bring up any cause for review by the Supreme Court shall be allowed or entertained unless duly applied for within three months after entry of the judgment or decree complained of."

This deprives us of jurisdiction to consider the merits of the decree of October, 1921.

The case of *Hamilton-Brown Shoe Co.* v. *Wolf Brothers & Co.*, 240 U. S. 251, is cited to sustain a contrary view, but it fails to do so. In that case, a writ of certiorari had been applied for to this Court to review an interlocutory decree of the Circuit Court of Appeals and denied. The case went back to the District Court for a final accounting for infringement of a trademark and after a final decree for profits came again to the Circuit Court of Appeals and was affirmed. Then a second application was made for a certiorari and it was allowed. The respondent contended that this Court could not review the whole case including the merits of the interlocutory decree because of the denial of the first application for certiorari. We held that the denial constituted no bar because the decree sought then to be reviewed was not final. Our power to grant writs of certiorari extends to interlocutory as well as final decrees; and a mere denial of the writ to an interlocutory ruling of the Circuit Court of Appeals does not limit our power to review the whole case when it is brought here by our certiorari on final decree. In the case before us, the decree of October, 1921, which we declined to review in January, 1922, was a final decree and we are expressly denied power to review it after three months.

What we are to consider on this writ is whether the Circuit Court of Appeals on the petition for a rule against

the Toledo Company had anything presented to it in the record in the Ohio court which required it to stay its hand in using available process to enforce its final decree. We are very clear that it had not. It has been necessary to make an elaborate statement to show the complicated facts; but when they are arrayed in order so as to be understood, there is no escape from the conclusion that the action of the Ohio court could not and should not interfere with or stay the due course of proceedings to enforce the Seventh Circuit decree.

The application to the Circuit Court of Appeals in 1913 to frame its mandate so as to permit that court to rehear the issue on the merits of the validity of the patent already found and affirmed by both courts, was addressed to the discretion of that court and that was exercised to deny the application, presumably because the application showed on its face a lack of the due diligence in not producing the alleged newly discovered evidence in time to have presented it to the trial court at the hearing on the merits in June, 1912. The Toledo Company had been advised of the claim of its infringement of the Smith patent within a year after it began to make and sell the aluminum cylinder scale in 1906 by two suits of the Computing Scale Company and its attention had been directed to the necessity of preparing for a defense. This was further stimulated by the Chicago suit, the one at bar, in 1910, in which the Toledo Company filed an answer averring among other defenses that the Smith patent had been anticipated not only by the Phinney patent itself but by prior manufacture, sale and commercial use by Phinney of scales which embraced the device whose invention was claimed by Smith, and that this prior use was at Pawtucket, Rhode Island.

In spite of this, the agents and counsel of the Toledo Company never visited Pawtucket before the hearing on the validity of the Smith patent in June, 1912. The only

reason for this failure is the suggestion that the model of
the cylinder deposited by Phinney in the patent office
with his application was a small solid wooden cylinder,
not full size, which led counsel to think that no practice
under the patent would show lightness of material and
weight. It was a matter of equitable discretion for the
Circuit Court of Appeals to determine whether this was
sufficient excuse. *Hopkins* v. *Hebard,* 235 U. S. 287.
Certainly it was not an abuse of its discretion to hold that
it was not a good one. The natural and obvious course
of one tracing out evidence of prior commercial use of
Phinney which was formally averred in the Toledo Com-
pany's bill to have taken place at Pawtucket, would have
been to go to Pawtucket and look up Phinney, or, if dead,
his family and successors. Had this course been pursued,
Phinney's widow and son would have been found there
and several of those whose affidavits and depositions are
now produced who say that they bought and used the
Phinney scales made with light wood and paper cylinders.
From those witnesses, too, the investigator would have
been led directly to the proceedings in Federal Company
suit in Philadelphia, the record of which contained all
this evidence, and he would have found without difficulty
the three original Phinney scales that were exhibits in
that case. Nor can we say that it was an abuse of discre-
tion for the Circuit Court of Appeals to refuse a similar
application, made in October, 1921, to open up the case
to permit a rehearing of an issue, settled nine years be-
fore, when the evidence as to the lack of diligence of the
Toledo Company was just the same.

It is unnecessary to determine whether the applications
of 1913 and 1921 come within the proper definition of a
bill of review in a court of chancery. It is enough to say
that whether they were merely motions for rehearing, like
a motion for new trial at law, or were applications in the
nature of a bill of review, they were addressed to the

sound discretion of the Court, and based as they were upon the ground of newly discovered evidence, the indispensable condition of their being granted was that the failure to discover the evidence in time for the trial was not due to a lack of diligence on the part of the applicant. That condition precedent was not fulfilled.

Do the additional facts averred in the bill filed in the Ohio court change the situation? It is said they show extrinsic fraud committed by the Computing Scale Company upon proof of which a court of equity, although in another jurisdiction, having jurisdiction of the parties may enjoin the one guilty of the fraud from profiting by a decree so obtained. There has been much discussion as to whether extrinsic fraud is here alleged, and the case of *United States* v. *Throckmorton,* 98 U. S. 61, is cited and numerous other authorities since that case. We do not find ourselves obliged to enter upon a consideration of the sometimes nice distinctions made between intrinsic and extrinsic frauds in the application of the rule, because in any case to justify setting aside a decree for fraud whether extrinsic or intrinsic, it must appear that the fraud charged really prevented the party complaining from making a full and fair defense. If it does not so appear, then proof of the ultimate fact, to wit, that the decree was obtained by fraud, fails. That is the case here.

The allegations of the bill and of the affidavits are of a conspiracy by the inner circle of the Computing Scale Company's agents commenced in 1902, years before the Toledo Company began to make and sell cylinder drum scales, to monopolize the business of making and selling scales, to put the Toledo Company out of business, and after it began to make cylinder scales, to prevent it from so doing by suits brought on the Smith patent which it knew to be invalid because of the Phinney prior use. In pursuance of the conspiracy it is charged that it proceeded to buy up and keep from the Toledo Company knowledge

of, and access to, the Phinney scales. Proof is adduced
to show that the Computing Scale Company did buy up
as many of the Phinney scales as it could secure. But
there is not anywhere in the record, which we can find, or
which has been pointed out to us, any real evidence that
the Toledo Company was, in the slightest degree, inter-
fered with by acts of the Computing Company in its
search for evidence of the Phinney prior use. Had the
Toledo Company found, as it might easily have done, the
witnesses in Pawtucket, it would have found the oral evi-
dence as to the existence of the Phinney scales and would
have been led directly to the Philadelphia suit where it
would have found the cylinders it did find after June 1912.
Moreover there were the Randall suit in Philadelphia in
1901 and the Standard suit in Wisconsin where other
Phinney scales were also exhibits and open to inspection
by the Toledo Company before 1912. There is not a scin-
tilla of evidence to show any effort on the part of the
Computing Scale Company to induce any witnesses not
to testify, or to spirit them away from contact with the
Toledo Company. There is nothing to show that if the
Computing Scale Company had not bought the Phinney
scales, the Toledo Company would have found them any
earlier. The passages in the brief on behalf of the Com-
puting Company in the first hearing of the case on appeal
in the Circuit Court of Appeals which stated that Phinney
had not made scales for commercial use had reference of
course to the record before the court, were made after the
trial in the District Court and so could not have misled
the Toledo Company in its preparation for that trial.
The conclusion is unavoidable that the only cause of the
failure of the Toledo Company to produce this Phinney
evidence was the mistake of the counsel for the Toledo
Company in assuming that an inadequate model in the
patent office filed by Phinney showed no relevant prior use
by him, and the failure of the Toledo Company's agents

to take the ordinary and obvious course to make adequate inquiry at Pawtucket as to the prior use which it had averred in the bill.  Certainly the Computing Scale Company was not responsible for the inadequacy of Phinney's model or for the failure of the Toledo Company to make the inquiry before June, 1912.  The averments as to conspiracy to monopolize, and to drive the Toledo Company out of business and the details of the purchase of Phinney scales are all irrelevant because they are not shown to have had any causal connection with the failure of the Toledo Company to find out earlier what it did stumble on in 1913.

We do not understand it to be contended that there was any relation between the Computing Scale Company and the Toledo Company which made it the duty of the former to furnish evidence to the latter to weaken its own case or that silence in respect to the Phinney scales constituted that kind of fraud which would invalidate the decree unless it was accompanied by acts which actually prevented the Toledo Company's finding and availing itself of such evidence.  Clearly there is no such rule of law in a case like this.

Another aspect of this record leads to the same conclusion.  However nice the distinction between extrinsic and intrinsic fraud, we have been cited to no case where it has been held that fraud is extrinsic when the court rendering the decree attacked had before it the same issue of fraud on the same facts, only a little more elaborated as to the motive of the party charged with committing it. The necessary inference from the affidavits filed in May, 1913, by the Toledo Company, and its depositions in 1917, and its motion and briefs in 1921, in the Circuit Court of Appeals, was that the Computing Scale Company had been securing Phinney scales with a view of concealing them from the Toledo Company, and these were all before the Circuit Court of Appeals when it finally refused

to open the decree on its merits in 1921 to let in the evidence. It did not add to the weight of that evidence for the purpose for which it could be used in either court, that this was the result of a conspiracy to monopolize trade or that it grew out of a malicious feeling toward the Toledo Company. What the District Court for Northern Ohio was doing in hearing the injunction suit and issuing a temporary injunction was merely reviewing the discretion of the Circuit Court of Appeals of the Seventh Circuit in dealing with the same ultimate facts and reaching a different conclusion. This was beyond its province. *Embry* v. *Palmer*, 107 U. S. 3, 11; *Telford* v. *Brinkerhoff*, 163 Ill. 439, 443; *Marine Insurance Co.* v. *Hodgson*, 7 Cranch, 332.

It is pressed upon us that the amount of this decree which by reason of growing interest will considerably exceed half a million dollars, is such that its enforcement may be ruinous to the Toledo Company, and yet that company has never had an opportunity to bring to a hearing this evidence of the Phinney prior commercial use which on the showing and argument is clearly a complete defense to a suit prosecuted by an unscrupulous competitor, conscious all the time of its falsity and injustice. This view of the case is not a fair one. The Toledo Company had a chance to make a defense of the Phinney prior use and failed to do so because of its own lack of diligence. As it did not secure a hearing of the Phinney defense, its opponent had no chance to meet it, as possibly it might have done by showing that the use relied on was a futile one because the Phinney scale as made was not practical or did not weigh accurately or accomplish the purpose of the Smith patent. The fact that but twenty machines were made, and that these ceased to be used years ago or were destroyed, suggests the probability of such an answer. We can not know what the result of the hearing would have been on this

issue if tried, because only one side is presented.    We are prevented from knowing it by a most salutary rule of law which after parties have had a full and fair opportunity to prepare their case, refuses to permit them to drag out litigation by bringing in new evidence which with due diligence they ought to have discovered before the hearing. The apparent hardship of particular cases should not and can not weigh against the application of this sound principle.    As Mr. Justice Story remarked in *Ocean Insurance Co.* v. *Fields,* 2 Story, 59; 18 Fed. Cas. 532, " It is for the public interest and policy to make an end to litigation, or, as was pointedly said by a great jurist, that suits may not be immortal, while men are mortal."

The Surety Companies object to the order of the Circuit Court of Appeals directing the District Court to enter summary judgment against them for the amount due on the decree, because it causes them to pay a decree which the Toledo Company, their principal, deposited in Toledo banks enough money to their order to pay, but which a court of competent jurisdiction enjoins them from paying, or from using this money to pay.    They say they are to be ground between the upper and the nether millstones. They say they are indifferent between the parties and only wish to be protected.    The order which the Circuit Court of Appeals directed against them was within its jurisdiction.    *Pease* v. *Rathbun-Jones Engineering Co.,* 243 U. S. 273, 278.    It was right, was final, and they must obey it. They can appeal from the order of the Ohio court.    Indeed we are advised that the cause is now pending on appeal in the Circuit Court of Appeals of the Sixth Circuit.    If they satisfy the decree of the Seventh Circuit, they can be reasonably confident that they will not be required to suffer a double burden.    The Circuit Court of Appeals of the Sixth Circuit is not likely to ignore the ruling of this Court in the premises; and the cause pending in the Sixth Circuit can be brought within the jurisdiction of this Court at any time by certiorari.

It is objected that the Circuit Court of Appeals had no power to direct the District Court to enjoin the Toledo Company from further maintaining its Ohio bill or from filing elsewhere any similar bill. It is also objected that it can not direct the District Court to assess the Computing Company's expenses including a reasonable attorney's fee in the matter of the Ohio bill and to enter a summary decree therefor. We think these orders were within the power of the Circuit Court of Appeals. This Ohio proceeding was instituted to halt and defeat the decree of the Circuit Court of Appeals, while that decree was still in that court to be enforced by mandate to the lower court. Under § 262 of the Judicial Code, that court had the right to issue all writs not specifically provided for by statute which might be necessary for the exercise of its appellate jurisdiction. It could, therefore, itself have enjoined the Toledo Company from interfering with the execution of its own decree, *Merrimac River Savings Bank* v. *Clay Center*, 219 U. S. 527, 535; or it could direct the District Court to do so, as it did, *Supreme Tribe of Ben-Hur* v. *Cauble*, 255 U. S. 356; *Hart Steel Co.* v. *Railroad Supply Co.*, 244 U. S. 294, 299; *Kessler* v. *Eldred*, 206 U. S. 285. Moreover, when the character of the proceeding initiated by the Toledo Company, a party before it, to stop the execution of its decree was disclosed on a full hearing on the petition for a rule against the Toledo Company, it had jurisdiction to determine whether the filing and maintenance of the bill was in contempt of its jurisdiction, *New Orleans* v. *Steamship Co.*, 20 Wall. 387, 392; *Swift* v. *Black Panther Oil & Gas Co.*, 244 Fed. 20, 29; and finding it to be so, to punish it by a compensatory imposition, *Merrimac River Savings Bank* v. *Clay Center*, 219 U. S. 527, 535; or to remand it to the District Court to do so.

What we are considering here is the rightful course of a court which having entered a final decree is proceeding

upon the application of the successful party in the decree to put it into lawful execution. It is advised by this party that the *quasi* parties, the sureties who have made themselves directly liable upon summary process for prompt payment of the decree, have been enjoined from complying with their obligation to the court by a court of another jurisdiction, that the successful party has also been enjoined from seeking enforcement of the decree, and all this at the suit of the party condemned in the decree to pay and on the ground of fraud exercised upon the court itself in obtaining the decree. If the successful party though thus enjoined, is willing to risk punishment for contempt by the enjoining court, and applies for enforcement of the decree, the court whose decree it is, is clearly not ousted of jurisdiction to proceed to execute it. The proceeding in the enjoining court is solely *in personam* and does not affect the power or functions of the court whose decree is in question. If advised that there is real ground for impeachment of its decree, it may in its discretion stay its hand until the issue is determined in another court of competent jurisdiction, but if upon examination it finds no such ground advanced, it may properly proceed to secure to the successful party the fruits of his litigation. If the defeated party in his suit in another jurisdiction only seeks to restrain the successful party from prosecuting his decree to payment, there should be unusual circumstances of disrespect to the court entering the decree to justify punishment for contempt. But when he unites in his new suit for an injunction the sureties who, as *quasi* parties, are obliged to respond to the decree in the course of execution, he puts himself in contempt of the court whose decree it is, and may be punished for it. In the former case he is merely restraining a party who, without disobedience or disrespect to any obligation to the court making the decree, has full discretion and liberty to withhold his hand in pressing it to

execution.   In the latter case, he is obstructing the proc-
ess of the court in a proceeding in which its action has
been properly and lawfully invoked.   The degree of pun-
ishment for contempt in such case is in the discretion of
the court whose dignity has been offended and whose
process has been obstructed.   *New Orleans* v. *Steamship
Co.*, 20 Wall. 387.   Certainly it was not an abuse of dis-
cretion in this case to impose as a penalty, compensation
for the expenses incurred by the successful party to the
decree in defending its rights in the Ohio court.

<div align="right">

*Decree affirmed.*