**In the Matter of Richard Darriel CARICO, Bankrupt.**

**No. 2611.**

United States District Court,
E. D. Virginia,
Newport News Division.

Feb. 5, 1970.

Richard W. Hudgins, Newport News, Va., for petitioner.

A. M. Phipps, Clintwood, Va., for Cumberland Bank and Trust Company, Inc.

MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

The bankrupt, whose case was officially closed on June 28, 1968, on which date a discharge in bankruptcy was granted, was required to reopen his bankruptcy proceeding pursuant to an order entered on November 25, 1969, for

the purpose of seeking a permanent injunction against the Cumberland Bank and Trust Company, Inc., and its attorney, A. M. Phipps, both of Clintwood, Virginia, to prevent said bank from attempting to enforce a certain judgment entered in favor of said bank against Richard D. Carico by the County Court of Dickenson County, Virginia, on September 12, 1969. The bankrupt also seeks reasonable attorney's fees by reason of the harassing nature of the bank's actions after the bankrupt, through his attorney, had fully advised the bank and its attorney that the claim had been validly discharged in bankruptcy.

On February 14, 1968, Carico filed a voluntary petition in bankruptcy listing as a secured creditor the aforesaid bank which held a lien, dated April 22, 1967, on a 1967 Plymouth stated to be worth $2,500, with the amount due the bank in the sum of $3,037.11. Notices of the first meeting of creditors and an order fixing the last day for filing of objections to the discharge were duly mailed to all creditors, including the bank, on February 15, 1968. The first meeting of creditors was scheduled for March 6, 1968, and April 5, 1968, was fixed as the last day for filing objections. No objections to the discharge were ever filed.[1]

At the first meeting of creditors the bankrupt testified that the 1967 Plymouth had been involved in an accident about six months prior thereto, and that a dealer, Clintwood Chrysler-Plymouth, Inc., had possession of the automobile. The trustee in bankruptcy communicated with the dealer but received no response. On April 29, 1968, the trustee filed a petition for turnover and, on the same date, a certified copy of this order was mailed to Clintwood Chrysler-Plymouth, Inc., returnable to May 8, 1968. At this latter hearing, it developed that the vehicle had been repossessed on October 23, 1967, after the automobile had been damaged in an accident. Accordingly,

the Referee directed that Schedule B–2 and the summary be amended to delete the 1967 Plymouth as an asset of the bankrupt.

On July 14, 1969, a notice of motion was filed by the bank against the bankrupt and Clintwood Chrysler-Plymouth, Inc., same being returnable to the County Court of Dickenson County, Virginia, on July 25, 1969. At this time the bankrupt was living in Portsmouth, Virginia. Service was apparently made upon Carico on or about July 19, 1969. He finally contacted his attorney a day or two prior to the return date of the motion for judgment. The bankrupt's attorney immediately forwarded to the clerk of the state court (not of record), an answer of the defendant Carico and a motion to rehear. Copies of this letter and the pleadings were sent to the bank's attorney, A. M. Phipps. The letter requested a collect telephone call from Mr. Phipps.

Apparently the state court judge did telephone the bankrupt's attorney on July 30, 1969. By letter dated August 4, 1969, with copies to Mr. Phipps, and Clintwood Chrysler-Plymouth, Inc., the attorney for the bankrupt forwarded to the state court judge a motion to rehear which the judge had advised would be considered on August 19, 1969. The bankrupt's attorney also suggested that, if the enclosure was not satisfactory, he would appreciate a collect telephone call in order that Carico could arrange for the services of an attorney in Clintwood.

By letter dated September 17, 1969, the clerk of the state court notified the bankrupt's attorney that the motion for rehearing had been denied, and that judgment had been rendered against Carico *only* on September 12, 1969.

After the bankruptcy case had been reopened, an order to show cause was entered directing the Cumberland Bank and Trust Company, Inc., to appear on January 20, 1970, in answer to the request for a permanent injunction and at-

---

1. In addition to the notices aforesaid, an order to show cause and for authorization of sales was likewise mailed to all creditors.

torney's fees. Although the pleadings filed in the state court clearly state that Schedule A–2, listing the bank as a creditor, had been attached to the answer— and the motion to rehear forwarded to the judge on August 4, 1969, refers to Schedule A–2 having been previously filed—the bank's only answer to the show cause order is in the form of a letter from A. M. Phipps, as attorney for the bank, to the bankrupt's counsel, dated December 10, 1969. When the show cause hearing was conducted on January 20, 1970, the letter was presented as evidence. In short, the attorney states that there was no evidence at the state court trial to the effect that Carico had listed the bank as a creditor.[2] The bank's attorney, confessing error, states that he did not intend to appear on January 20, 1970, and further says, "You may have entered any order which you see fit to have entered." The letter closed with an apology for the inconvenience caused.

 The broad power vested in this court to insure that a person discharged in bankruptcy is not unduly denied the benefits of his adjudication and discharge is well settled. Under the ancillary jurisdiction derived from 11 U.S. C. section 11, a federal court may enjoin proceedings in a state court where it appears that equity would warrant such action. Local Loan Co. v. Hunt, 292 U. S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1933); Personal Industrial Loan Corporation v. Forgay, 240 F.2d 18 (10 Cir., 1956). While the state court judgment has already been entered in this case, the circumstances set forth above clearly warrant the issuance of an injunction against the creditor. An appeal through the state court system would have required a substantial bond and unnecessary expense by a person financially unable to incur same.

 The interesting question is whether attorney's fees, or damages by way of attorney's fees, may be allowed against the creditor. Federal courts, sitting in equity, have the power to award such fees as costs in exceptional cases where "justice" so demands. Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Local No. 149 Intern Union, United Auto, Aircraft, and Agr. Implement Workers of America (UAW–AFL–CIO, v. American Brake Shoe Co., 298 F.2d 212 (4 Cir., 1962); In re Swofford, 112 F.Supp. 893 (D.C.Minn., 1952).

As stated by the Fourth Circuit in American Brake Shoe Co., "Unnecessary, groundless, vexatious and oppressive petitions and motions have been held to constitute appropriate reason for the exercise of the equitable power to award attorneys' fees against the offending party, In re Swartz, 130 F.2d 229 (7 Cir. 1942), rehearing denied."

The case of *In re Swofford*, supra, involved a finance company which, with full knowledge that bankruptcy proceedings were pending, repossessed from the bankrupt a truck, and the court awarded the trustee an attorney's fee at the hands of the finance company.

The Supreme Court, in Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1961), awarded damages by way of attorneys' fees because the shipowner forced the seaman to "go to court to get what was plainly owed him under laws that were centuries old."

 To permit creditors whose claims are validly discharged in bank-

---

2. The file reflects that, by letter dated December 1, 1969, Mr. Phipps wrote to the clerk of the federal court to obtain a copy of that portion of the bankrupt's schedule showing the bank listed as a creditor. This was more then four months after the attorney had been advised, through pleadings filed by the bankrupt's attorney in the state court, that the bank had been listed as a creditor. Assuming arguendo that the bank either did not receive the notice or otherwise failed to mark its records accordingly, it is abundantly clear that, at the time the state court judgment was entered, the bank's attorney and the state court had ample notice that the bank had been properly listed as a creditor.

ruptcy, and who have clear notice of such action, to persist in obtaining judgments after the bankrupt fully discloses the facts, is nothing more than frivolous harassment which, if permitted to continue with impunity, would destroy the purpose and effective operation of the Bankruptcy Act. If each creditor whose claim is discharged pursues a purported remedy in a state court after receiving clear notice that a discharge has been granted, it would completely frustrate the Act. We hold that, in these circumstances, an attorney's fee should be allowed.

Counsel for the bankrupt has filed a statement of his legal services rendered to the bankrupt occasioned by the action of the creditor. An allowance of $235.00 is made. The creditor may satisfy this item of costs by payment to Hudgins and Gibson, Attorneys. If not paid within 30 days from this date, a formal judgment order will be entered unless an appeal is noted in the interim.

An injunction order has this day been entered.