In the Matter of Hayward Eugene KAID, Bankrupt.

No. 1029–71–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Sept. 18, 1972.

Osie H. Gay, Jr., Virginia Beach, Va., for Bankrupt.

Rexford R. Cherryman, Virginia Beach, Va., for Sears, Roebuck & Co.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

On March 13, 1972, the bankrupt was discharged from his debts. After that date his creditor, Sears, Roebuck and Company, sued the bankrupt in a state court on a prior debt and received a judgment in its favor. The bankrupt then moved to have this bankruptcy case reopened and the judgment declared null and void. The matter was reopened and the creditor was ordered to show cause why it should not be held in contempt for violating the terms of the discharge order. The issue presented is whether the effect of a bankruptcy discharge on a debt arising from an allegedly fraudulent conveyance may still by adjudicated in state court. Pursuant to the 1970 amendments we hold that it cannot, and find Sears, Roebuck and Company in technical contempt.

On or about April 20, 1970, and June 17, 1970, the bankrupt purchased from the creditor an AM-FM radio, a mattress, a small living room suite and a re-

cliner, having a total value of $523.54. The bankrupt signed the necessary papers giving the creditor a security interest in the goods. On December 30, 1971, the bankrupt filed a voluntary petition and was subsequently declared bankrupt. The creditor was listed on the bankrupt's schedule of debts and, along with other creditors, was notified that the first meeting would be held on January 25, 1972, and that March 10, 1972, was fixed as the last day for filing objections to discharge and applications to determine the nondischargeability of debts pursuant to clauses (2), (4) and (8) of section 17a. On January 17, 1972, the creditor requested an abandonment order on its secured collateral, which was granted three days later. The creditor failed to appear at the first meeting of creditors, at which time the bankrupt testified that the property in question had worn out and had been thrown away. Being unable to find its property the creditor instituted a detinue action in the Civil Justice Court of the City of Norfolk on February 15, 1972. The bankrupt was discharged from his indebtedness on March 13, 1972, and notice of this fact was sent to all creditors. On April 14, 1972, the creditor amended its detinue complaint in the state court to allege fraudulent conversion. The bankrupt appeared in the state court and defended the action on its merits, through the same counsel who represented him in the bankruptcy proceedings. A judgment was rendered in favor of the creditor which prompted the bankrupt to reopen his bankruptcy in federal court. A contempt hearing was held to determine why the creditor should not be held in contempt for continuing the state court action after the bankrupt had been discharged from his debts.

The controversy in this case revolves primarily around sections 14 and 17 of the Bankruptcy Act, 11 U.S.C., §§ 32 and 35. Section 14 provides for the discharge of a bankrupt's provable debts, and section 17 excepts from the general discharge certain classes of debts.

Prior to the effective date of the 1970 amendment the general rule was that the bankruptcy court had jurisdiction only to determine the right to a general discharge, and the effect of such discharge would later be determined in a state court action. "It seems clear that under normal circumstances the bankruptcy court could not specifically declare a debt nondischargeable under § 17 of the Bankruptcy Act," 11 U.S.C., § 35. In the absence of exceptional circumstances the remedy of the creditor seeking to hold a debt nondischargeable in bankruptcy lies in another tribunal as there is a clear distinction between the right to a discharge in bankruptcy and the effects of a discharge. In re Bell, 212 F.Supp. 300 (E.D.Va., 1962).

The procedure for determining the dischargeability of particular claims was drastically altered by P.L. 91–467, 91st Cong., 2d Sess., S. 4247, S.Rep. No. 91–1173; H.Rep. No. 91–1502, Cong.Rec. Vol. 116 (1970); 2 U.S.Code, Cong. and Admin.News, p. 4156 (1970). By this amendment Congress enlarged the jurisdiction of the bankruptcy courts to adjudicate the effect of all discharges and made it the exclusive forum over certain debts involving moral turpitude. The aims and effects of the legislation are set out in H.Rep. No. 91–1502:

"The major purpose of the proposed legislation is to effectuate, more fully, the discharge in bankruptcy by rendering it less subject to abuse by harassing creditors. Under present law creditors are permitted to bring suit in State courts after a discharge in bankruptcy has been granted and many do so in the hope the debtor will not appear in that action, relying to his detriment upon the discharge * * *. S. 4247 is meant to correct this abuse. Under it, the matter of dischargeability of the type of debts commonly giving rise to the problem * * * will be within the exclusive jurisdiction of the bankruptcy court. The creditor asserting nondischargeability will have to file a timely appli-

cation in the absence of which the debt will be deemed discharged."

The subject matter of this litigation is § 17a(2) which excepts from discharge debts arising from the willful and malicious conversion of the property of another. If properly raised these debts are not discharged, as the creditor asserts. The question, however, is how and where they may be properly raised. Section 17c(2) provides:

"A creditor who contends that his debt is not discharged under clause (2), (4), or (8) of subdivision (a) of this section *must* file an application for a determination of dischargeability within the time fixed by the court * * * and, unless an application is timely filed, the debt shall be discharged." (Emphasis added.)

When timely notice is given, the bankruptcy court may, pursuant to § 17c(3), determine the dischargeability of the debt, and if it is found to be non-dischargeable the court must determine the merits of the claim, render judgment, and make all orders necessary for its enforcement. Congress also amended other sections of the act to afford the creditor adequate notice to raise his objections to discharge. Pursuant to § 14b(1) the creditor must be given notice to file any claims automatically discharged by § 17c(2), and the cut-off date is not less than 30 nor more than 90 days after the first meeting of creditors. Under § 14b(2) if no objections are raised the referee must enter an order discharging all debts. The order of discharge must provide that any judgment theretofore or thereafter obtained in any other court is null and void with respect to any debt discharged by § 17c(2), § 14f. The order must also enjoin all creditors from instituting or continuing any action to collect such debts, thus subjecting a creditor to contempt proceedings if he continues to litigate his claims against the bankrupt. Section 14h assures that every creditor will have notice of the terms of the discharge order. We think the provisions

cited make it clear that the bankruptcy court is the exclusive forum for contesting the dischargeability of debts arising from the willful and malicious conversion of another's property by a bankrupt.

The bankrupt in this case filed his petition after the effective date of the 1970 amendments. The creditor was given notice of the bankruptcy proceedings and participated in them to the extent of getting an abandonment order for its merchandise. It had notice that any objections to discharge of a 17a(2) debt must be raised in the bankruptcy court. This fact is specifically stated in the notice of bankruptcy. After the notice was received the creditor filed its detinue action in state court. On March 13, 1972, the bankrupt was discharged. The state court judge informed the creditor on March 17, 1972, that its remedy should be pursued in the bankruptcy court and it then filed its application to deny discharge, alleging a fraudulent conveyance. The referee informed the creditor that its time limit had run and the bankrupt had been discharged. This prompted the creditor to amend its state court detinue complaint to allege fraud and willful conversion, apparently under the mistaken belief that this would permit the state court to determine the effect of the discharge, as under prior law. However, the creditor was acting in contravention of the express terms of the discharge order. We must find it to be in technical contempt. The terms of the order clearly enjoined further litigation and the creditor had been given proper notice.

The bankrupt has requested costs and attorney's fees in defending the state court action and in reopening the bankruptcy here. The general rule is that attorney's fees are not to be taxed as costs or as damages. There are exceptions to this rule where civil contempt action is occasioned by willful disobedience of a court order, Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 426–428, 43 S.Ct. 458, 67 L.Ed. 719

(1923), or there has been unnecessary, groundless, vexatious and oppressive litigation, Local No. 149 I.U., U.A.A. & A. I.W. v. American Brake Shoe Co., 298 F.2d 212 (4 Cir., 1962). The court said in Sprague v. Ticonic National Bank, 307 U.S. 161, 166, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939):

> "Plainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation * * *. As in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility * * *. In any event such allowances are appropriate only in exceptional cases and for dominating reasons of justice."

█ In applying this fundamental discretion to the case before us, we do not believe that dominating reasons of justice require state court costs or attorney's fees to be taxed as costs. Only in the exceptional case will this be granted. See In re Carico, 308 F.Supp. 815 (E.D. Va., 1970). The bankrupt purchased from the creditor a radio, mattress and living room suite; bankruptcy ensued within less than a year. At the first meeting of creditors the bankrupt testified that this merchandise had worn out and been discarded. The articles in question were not the type which generally wear out within one year, and the bankrupt never complained to the creditor that the merchandise was faulty. The bankrupt's discharge did not decide the question of fraudulent conversion since automatic discharge occurred when objections were not filed. The state court, which did decide the merits of the claim, found willful conversion. If this were not enough to deny attorney's fees by itself, the bankrupt slept on his rights. Equity aids the diligent. During the entire period of the state court proceedings the bankrupt never requested this court to grant him relief, and he

was represented by the same counsel which represented him in bankruptcy. Under these circumstances the bankrupt and his attorney were themselves responsible for the aggravated costs in defending the state court action. Moreover, little or no assistance was rendered in resolving the question presented.

For the foregoing reasons the judgment of the Civil Justice Court, Norfolk, Virginia, is declared null and void and Sears, Roebuck and Company is enjoined from executing said judgment. If the judgment has already been satisfied, all sums recovered are to be returned to the bankrupt. Attorneys' fees and extraordinary costs are to be borne by the respective parties.