EAGLE COMTRONICS, INC.,
Plaintiff–Cross Appellant,

v.

ARROW COMMUNICATION LABORATORIES, INC. (doing business as Arcom), Northern Catv Sales, Inc., Andrew F. Tresness, Mary Tresness, and Greg Tresness, Defendants–Appellants.

Nos. 01–1544, 01–1591.

United States Court of Appeals,
Federal Circuit.

Decided: Sept. 17, 2002.

As Amended on Partial Grant of Rehearing and Denial of Rehearing En Banc Nov. 1, 2002.

———

J. Michael Jakes, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for plaintiff-cross appellant. With him on the brief was Kathleen A. Daley. Of counsel on the brief were Stephen P. Burr and Kevin C. Brown, Burr & Brown, of Syracuse, NY.

Charles W. Bradley, Orrick, Herrington & Sutcliffe LLP, of New York, NY, argued for defendant-appellants. With him on the brief was Lawrence P. Trapani, Lawrence P. Trapani, P.C., of Syracuse, NY. Of counsel was Patrick J. Hoeffner, Orrick, Herrington & Sutcliffe LLP, of New York, NY.

Before RADER, SCHALL and LINN, Circuit Judges.

LINN, Circuit Judge.

Arrow Communication Laboratories and other defendants (collectively, "Arcom") appeal an interlocutory order of the United States District Court for the Northern District of New York, denying its motion for an order to show why plaintiff, Eagle Comtronics, Inc. ("Eagle") and its counsel should not be held in civil contempt. *Eagle Comtronics v. Arrow Communication Labs.*, No. 00–CV–1694 (N.D.N.Y. June 8, 2001). Eagle cross appeals the district court's grant of summary judgment that Arcom's products do not infringe U.S. Patent No. 5,662,494 ("the '494 patent") under the doctrine of equivalents. *Eagle Comtronics v. Arrow Communication Labs.*, No. 00–CV–1694 (N.D.N.Y. July 6, 2001). Because the district court abused its discretion when it found no violation of the court's protective order, and because neither prosecution history estoppel nor the all-limitations rule bars infringement under the doctrine of equivalents, we reverse-in-part, vacate-in-part, and remand.

## I. BACKGROUND

### A. The Invention

Eagle owns the '494 patent, which is directed to an improvement related to electrical signal filters that are used to decode or unscramble protected television signals. Specifically, the invention relates to an improved cable filter structure that provides a sealed collet assembly to prevent moisture and/or other contaminants from entering the filter. Figure 9 depicts an embodiment of the improved invention and Figure 10 is prior art.

FIG. 9

FIG. 10

PRIOR ART

The cable filters of both Figures 9 and 10 use collet assemblies. The collet assembly of prior art Figure 10 is depicted in Figure 6 below.

FIG. 6

PRIOR ART

The prior art cable filter of Figures 6 and 10 includes a filter housing 30 that surrounds a circuit board assembly 10. '494 patent, col. 2, ll. 52–57. The circuit board 10 contains the electronics that filter signals delivered by cable lines. The housing 30 contains a female connector end for engaging a cable line and passing the signal to a downstream device such as a television. The female connector end includes the collet assembly, which is comprised of a front cap 60 and a rear insert body 62. *Id.,* col. 3, ll. 15–18. The collet assembly receives a wire that extends from the cable line through a contact extension 64 to carry the signal from the cable line to the circuit board. The filter is sealed to prevent moisture and/or other contaminants from entering the filter. The seal is accomplished by applying relatively large amounts of sealant to cover over the entire back portion of the collet. *Id.,* col. 1, ll. 38–39, 42–44. In the prior art cable filters, the sealant is blindly

placed over the entire rear portion of the rear insert body 62 after the collet assembly is inserted into the filter housing 30. That blind passing of sealant made the sealing process difficult, often resulting in inconsistencies in the quality of the manufactured filters. *Id.,* col. 1, ll. 44–48; col. 3, ll. 27–31.

The improvement of the '494 patent relates to the seal between the collet assembly and the filter housing. The improved collet assembly uses a self-sealing mechanism and thus avoids the blind placement of sealant and the need for a further sealing operation when the circuit board assembly is inserted within the filter housing. *Id.,* col. 3, ll. 54–64. Different types of seals can be used to self-seal the improved collet assembly. For example, a compression seal 76 is used in the collet assembly depicted in Figure 7, and an O-ring seal 79 is used in the collet assembly depicted in Figure 8.

FIG. 7

FIG. 8

Claim 1, the only independent claim, recites the following, with disputed claim terms highlighted in bold:

A filter structure comprising:

[1] a circuit board assembly including

[2] **a collet assembly comprising**

[3] **a front cap,**

[4] **a rear insert body including a rear end portion,**

[5] a collet contact extension passing through the rear insert body, and

[6] **a seal located between the front cap and the rear insert body;**

[7] a filter housing including

[8] at least one open end and

[9] a connector coupled to a second end,

[10] wherein the circuit board assembly is placed within the filter housing such that the collet assembly is located within the connector;

[11] wherein the seal of the collet assembly seals an interface between the collet assembly and the connector, and

[12] a region of the housing that surrounds the rear end portion is not covered by sealant material.

*Id.,* col. 4, ll. 47–59.

### B. The Prosecution History

The application for the '494 patent was originally filed on November 22, 1993, as Serial No. 155,135. The examiner rejected claim 3 of the original application (the precursor to patent claim 1) as obvious under 35 U.S.C. § 103 over Figure 2 of U.S. Patent No. 4,901,043 to Palinkas in view of the admitted prior art and U.S. Patent No. 4,857,006 to Linyeav et al. The original application was eventually abandoned, and on April 5, 1995, Eagle filed a continuation application, Serial No. 146,-

637. The continuation application issued as the '494 patent on September 2, 1997.

The examiner repeatedly rejected the claims as obvious throughout the prosecution. In office actions dated April 26, 1994; October 28, 1994; April 5, 1996; and September 26, 1996, the examiner repeated the same rejection:

> Linyeav et al. shows exterior seals 26 seated in grooves, and to provide the Figure 6 collet assembly with an external seal seated in a groove thus would

have been obvious, to seal the collet assembly relative to the housing. . . . It would have been obvious to use the admitted prior art collet assembly in the filter housing of Palinkas, to provide electrical connection to another electrical device. Palinkas has an outer sleeve. To form end 26 of Palinkas as a separate end cap would have been an obvious matter of design lacking design criticality.

Figure 2 of Palinkas and Figure 1 of Linyeav are reproduced below.

PRIOR ART

Throughout the prosecution, Eagle challenged the examiner's obviousness rejections. Some comments made in Eagle's patentability arguments led to the district court's finding of prosecution history estoppel in this case. For example, in response to the November 4, 1994 rejection for obviousness over the admitted prior art in view of Linyeav, Eagle argued:

the presently claimed invention is directed to an improved collet assembly, and a filter structure including such a collet assembly. The collet assembly includes a front cap, a rear insert body, a collet contact extension passing through the rear insert body, and a seal located between the front cap and the insert body. By providing the seal between the rear insert body and the front cap (see Figs. 7 and 8, for example), the claimed invention prevents moisture and other contaminants from entering the collet assembly and filter structure by sealing an interface between the collet assembly and the filter housing.

Eagle repeated the same argument in response to the April 11, 1996 Office Action: "[T]he presently claimed invention has been developed to overcome the deficiencies of the prior art by utilizing a seal between the front cap and the rear insert body as recited in the present claims." Following a final rejection, Eagle appealed and made further arguments in support of its theory that the claims were not obvious in light of the prior art. For example, Eagle again argued:

> The presently claimed invention has been developed to improve upon the prior art collet assembly and filter structure shown in Figs. 6 and 10, respectively.... According to the prior art collet assembly, a rear insert body is press-fitted with a front cap. No seal is provided between the front cap and the rear insert body. To seal the collet assembly inside housing 30, epoxy material 100 is loaded into an interior of the housing after assembly.

The appeal brief continued: "Absent [Eagle's] own disclosure, the art does not suggest the particular position of the O-ring

as presently claimed. Replacement of the admitted prior art epoxy with an O-ring does not provide a structure as claimed, wherein the O-ring is provided between the front cap and rear insert body."

Eventually, the examiner allowed the claims with an examiner's amendment that added the below underlined language to what is now claim 1.

> A filter structure comprising:
> a circuit board assembly including
> a collet assembly comprising
> a front cap,
> a rear insert body *including a rear end portion,*
> a collet contact extension passing through the rear insert body, and
> a seal located between the front cap and the rear insert body;
>
> * * *
>
> *and a region of the housing that surrounds the rear end portion is not covered by sealant material.*

### C. The Accused Devices

The two accused devices in this case are Arcom's AHP–50 and MN–2 cable filters. Like the filters described in the '494 patent, both accused devices use a collet assembly to prevent moisture and other contaminates from entering the filter. However, unlike the claimed collet assembly in the '494 patent, the accused filters do not have both a front cap and a rear insert body. Rather, the accused collet assembly is a one-piece insulation block, or as Arcom describes it, an "integrated" insulation block. For purposes of this motion, Arcom stipulates that both the AHP–50 and MN–2 cable filters have the same collet assembly. The collet assembly of the accused filter is reproduced below.

O—RING

electrical contact

INSULATOR BLOCK

It is undisputed that the accused devices do not literally infringe the claims. The only issue before the district court was whether the accused filters infringe under the doctrine of equivalents.

### D. The Procedural History

Eagle filed suit against Arcom on November 7, 2000, alleging that the AHP–50 and MN–2 filters infringe the claims of the '494 patent under the doctrine of equivalents. Arcom eventually moved for summary judgment of non-infringement. Before allowing discovery, a magistrate judge entered a protective order drafted by Eagle and agreed to by the parties. The protective order lists who has access to documents marked "Confidential—Attorneys Only." It provides in relevant part that confidential material "shall not be used for any purpose other than for this action, unless authorized by the Court." The protective order also states that before a party discloses information marked "Confidential" or "Confidential—Attorneys Only", the party intending to disclose such material shall inform the other party of its intentions in writing.

During discovery, Arcom produced a pending patent application marked "Confidential" or "Confidential—Attorneys Only." That application was directed to a collet assembly having an integrated insulation block ("Arcom application") and listed Arcom employees, Martin Zelinz and Jerry Gould, as the inventors. Eagle claims that its employee, Michael Lamb, was the real inventor of the device in the Arcom application. Gould was Lamb's supervisor at Eagle before he left the company in 1997 to work for Arcom. Eagle claims that once its counsel read the Arcom application, it "had to take immediate action to protect Eagle's interests," specifically to protect itself from a potential on-sale bar due to Arcom's sale of the filter. Thus, without giving prior notification to the court or Arcom, Eagle's counsel, Stephen P. Burr, took the Arcom application, made two photocopies of it, and filed them with the United States Patent and Trademark Office ("PTO") as Eagle's patent applications. One application listed an Eagle employee, Lamb, as the inventor and the other listed Lamb as a joint inventor with Arcom's inventors, Zelinz and Gould. The joint application was filed as a continuation

application, claiming priority to the Arcom application. Nine days later, Burr notified Arcom's counsel by letter of what he had done. Enclosed with the letter, Burr included declaration and assignment forms in the event that Arcom wished to "remedy [its] misconduct" by assigning its patent application to Eagle. Burr concluded his letter by suggesting that following assignment by Arcom of its own application to Eagle, Eagle would then file a preliminary amendment to delete the claims Eagle did not own.

Arcom moved for an Order to Show Cause why plaintiff and its counsel should not be held in civil contempt and sanctioned for violating the protective order. Specifically, Arcom asked the court to order Eagle to do the following:

(1) to return, within seven days, [Arcom's] patent application file that was produced to [Eagle] as "Confidential–Attorneys Only," and all copies thereof, including the copies that correspond to those filed by [Eagle] in the [PTO], to maintain the subject matter of those applications strictly "Confidential–Attorneys Only," and to report to the Court the names of anyone other than [Eagle's] attorneys of record and their staffs to whom any subject matter in [Arcom's] patent application file had been disclosed;

(2) to expressly abandon the two patent applications filed in the [PTO], on behalf of [Eagle], each including a copy of [Arcom's] confidential patent application, and serve [Arcom] with a copy of the abandonment papers with proof of filing;

(3) to record in the [PTO], in each of said applications filed on behalf of [Eagle], a memorandum, signed by [Eagle], Mr. Lamb and Mr. Burr, that confirms the express abandonment of the applications and states that the assignments recorded under said applications are null

and void *ab initio* and serve defendants with a copy of the said memorandum with proof of filing;

(4) not to use the confidential application data of [Arcom's] patent application in any subsequent patent application filed by [Eagle], and ordering that no patent application on an electronic filter shall be filed on behalf of [Eagle], by or with the assistance of any attorney or other person who has had access to [Arcom's] confidential documents;

(5) to reimburse [Arcom] for [its] expenses and attorneys fees incurred in connection with making this application for relief.

Eagle noted that it did not show the Arcom application to any Eagle employees (including the purported inventor, Lamb) and argued that it did not violate the protective order because it did not disclose the Arcom application to anyone who had not already seen it. The district court agreed with Eagle and found that "Burr's conduct was not egregious enough to warrant an order to show cause. Although prudence suggests a safer course of action in the future, Burr's use of Arrow's patent application did not violate Magistrate Sharpe's Protective Order as the PTO already possessed these materials."

Following the denial of Arcom's motion for an order to show cause, Arcom filed a motion for summary judgment that its filters do not infringe the '494 patent under the doctrine of equivalents. Arcom argued that the statements made by Eagle in the prosecution history estopped Eagle from capturing a filter with a one-piece, "integrated" collet assembly. Arcom further argued that application of the doctrine of equivalents would violate the all-limitations rule. The district court agreed with Arcom that Eagle surrendered "any claims concerning the use of one-piece collet assembly bodies" and entered judgment of

non-infringement. In light of its disposition, the district court did not reach the issue of whether the application of the doctrine of equivalents would violate the all-limitations rule.

Here, Arcom argues that the district court abused its discretion by denying Arcom's order to show cause for violating the protective order. Specifically, it argues that the district court made a clearly erroneous finding of fact when it concluded that Eagle did not violate the protective order, and it otherwise abused its discretion by not sanctioning Eagle. Eagle argues that its actions were within the scope of the protective order, and the district court acted within its discretion by not imposing sanctions.

With respect to the merits of the patent dispute in Eagle's cross appeal, Eagle argues that: (1) the district court erred by holding that Eagle surrendered coverage of an "integrated" or one-piece insulation block and (2) the all-limitations rule does not preclude application of the doctrine of equivalents. Arcom argues that the district court properly concluded that prosecution history estoppel bars the application of the doctrine of equivalents here. In the alternative, Arcom urges affirmance based on the all-limitations rule.

Because Arcom's notice of appeal of the interlocutory order was filed after the district court dismissed Eagle's complaint on the merits, this court has jurisdiction over both appeals pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard Of Review

■ Because civil contempt proceedings are not unique to patent law, *Spindelfabrik Suessen–Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik AG,* 903 F.2d 1568, 1578, 14 USPQ2d 1913, 1921 (Fed.Cir.1990), we apply regional circuit law—here the law of the Second Circuit—to that issue. *See Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359, 50 USPQ2d 1672, 1675 (Fed. Cir.1999) (*en banc* in relevant part). The Second Circuit reviews the denial of a contempt order for an abuse of discretion. *See City of New York v. Local 28, Sheet Metal Workers' Int'l Ass'n,* 170 F.3d 279, 282–83 (2d Cir.1999). An abuse of discretion may be established by showing that the district court either made an error of law, or a clear error of judgment, or made findings that were clearly erroneous. *See Zervos v. Verizon N.Y., Inc.,* 252 F.3d 163, 169 (2d Cir.2001).

We review a district court's grant of summary judgment de novo, reapplying the standard applicable at the district court. *Rodime PLC v. Seagate Tech., Inc.,* 174 F.3d 1294, 1301, 50 USPQ2d 1429, 1434 (Fed.Cir.1999) (citing *Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994)). Summary judgment is only appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,* 228 F.3d 56, 61 (2d Cir.2000). We draw all reasonable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Contempt

■ Arcom argues that Eagle and its counsel deliberately and flagrantly violated the express terms of the district court's protective order by knowingly using the Arcom application for a use unrelated to the lawsuit. Arcom contends that by not finding a violation of the protective order and sanctioning Eagle and its counsel, the district court abused its discretion. In its brief, Eagle argued that the protective

**1314**

order gave complete discretion to the trial judge, and by not finding a violation of the protective order, the use of the Arcom patent application was "authorized by the court" pursuant to the terms of the protective order. Eagle further argued that Burr copied Arcom's application and submitted it to the PTO as an Eagle application to prevent Arcom from using a patent on Eagle's design as evidence of noninfringement under the doctrine of equivalents. Thus, Eagle argued, the action was taken for a purpose related to the action and was therefore within the scope of the protective order.

■ In the Second Circuit, a party may be held in contempt only if it is proven by "clear and convincing" evidence that the party violated a "clear and unambiguous" order of the court. *EEOC v. Local 638*, 81 F.3d 1162, 1171 (2d Cir.1996) (quoting *United States v. Local 1804–1*, 44 F.3d 1091, 1096 (2d Cir.1995)). The violation need not be willful, but it must be demonstrated that "the contemnor was not reasonably diligent in attempting to comply." *Id.* (quoting *Local 1804–1*, 44 F.3d at 1096). In the present case, we find that the district court abused its discretion when it held that "Burr's conduct was not egregious enough to warrant an order to show cause." The conduct in this case was indeed egregious and amounted to much more than Eagle providing the PTO with material that it already possessed. Before Eagle's counsel's conduct, the PTO had a pending patent application listing Arcom employees as the named inventors of a cable filter with a single-piece collet assembly. After Eagle copied Arcom's application and re-submitted it as its own, the PTO had a completely different application purporting to give rights to a completely different inventor. That had the potential effect of provoking an interference that would be completely independent of the litigation. Patent applications are preserved in secrecy by both law, 35

U.S.C. § 122, and regulation, 37 C.F.R. § 1.14, for a reason. The integrity of the patent system is maintained in part by inventors' understanding that their patent applications will remain secret until either the patents issue or the applications are otherwise published by the PTO. Breaches of this secrecy undermine the integrity of the patent system. When these breaches occur under a court's watch, sanctions are wholly appropriate. To the extent that the district court did not impose sanctions in this instance, we hold that it abused its discretion.

At oral argument, Eagle's appellate counsel wisely conceded that the protective order had been violated. The protective order in this case is clear and unambiguous on its face. It plainly states that items marked as "Confidential—Attorneys Only" "shall not be used for any purpose other than for this action, unless authorized by the Court." Copying a competitor's patent application obtained through discovery and submitting it as your own for whatever reason is not using the material for purposes of the litigation. Likewise, a ruling from a district court that an action does not violate the protective order does not amount to "authorization from the court" as this protective order contemplates. Eagle's undisputed conduct, plus the language of the unambiguous protective order, amount to the clear and convincing evidence needed to demonstrate that Eagle was in civil contempt of court. Under the circumstances of this case, the district court's failure to find a violation of the protective order was most certainly an abuse of discretion.

■ While there was a violation of the protective order, that does not end the inquiry. A district court has great discretion when deciding how to enforce violations of its own orders. *See Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399,

428, 43 S.Ct. 458, 67 L.Ed. 719 (1923) ("The degree of punishment for contempt . . . is in the discretion of the court whose dignity has been offended and whose process has been obstructed." (citing *S.B. Wheeler*, 87 U.S. (20 Wall.) 385, 387, 22 L.Ed. 385 (1874))). Arcom asked the district court to impose the sanctions listed above, which included a request that Eagle return the Arcom application. After judgment was entered in this case for Arcom, the Arcom application issued as U.S. Patent No. 6,323,743 B1. Thus, its file history is now a public record, and the specific sanctions requested no longer bear a logical relationship to the violation of the protective order. On remand, the district court can exercise its discretion and fashion an appropriate sanction, including a fine if deemed appropriate, for Eagle's violation of the protective order.

### C. Infringement Under the Doctrine of Equivalents

■■ Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) (noting that because each limitation contained in a patent claim is material to defining the scope of the patented invention, a doctrine of equivalents analysis must be applied to individual claim limitations, not to the invention as a whole). An element in the accused product is equivalent to a claim limitation if the differences between the two are "insubstantial" to one of ordinary skill in the art. *See id.* Relevant to the insubstantial differences inquiry is whether the missing element in the accused device "performs substantially the same function in substantially the same way to obtain the same result" as the claim limitation. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); *see also*

*Warner–Jenkinson*, 520 U.S. at 39–40, 117 S.Ct. 1040.

■■ However, there are limits to the application of the doctrine of equivalents aside from the question of insubstantiality of the differences. Two of those limits are at issue in this case. First, prosecution history estoppel can prevent a patentee from relying on the doctrine of equivalents when the patentee relinquishes subject matter during the prosecution of the patent, either by amendment or argument. *See Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1376–77, 50 USPQ2d 1033, 1036 (Fed.Cir.1999). Second, the question of insubstantiality of the differences is inapplicable if a claim limitation is totally missing from the accused device. *See Warner–Jenkinson*, 520 U.S. at 33–34, 117 S.Ct. 1040; *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934–35, 939, 4 USPQ2d 1737, 1739–40 (Fed.Cir.1987) (*en banc*). This limit is often referred to as the all-limitations rule. *See, e.g., Kustom Signals Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1333 (Fed. Cir.2001) ("No claimed [limitation], or an equivalent thereof, can be absent if the doctrine of equivalents is invoked."). We address each in turn.

#### 1. Prosecution History Estoppel

■ Eagle argues that the district court erred in holding that Eagle was estopped from asserting infringement under the doctrine of equivalents based on statements made in the prosecution history. Eagle contends that when considering the prosecution history as a whole, nothing establishes that Eagle surrendered coverage of a collet assembly having a one-piece insulation block as found in the accused Arcom filters. Arcom counters that Eagle surrendered coverage when it repeatedly distinguished the Eagle invention from the Linyeav reference. Arcom points to por-

tions of the prosecution history where Eagle distinguishes the prior art by (1) noting that the claimed invention calls for a front cap, a rear insert body, and a seal located between the front cap and rear insert body; (2) touting the advantages of the claimed construction; (3) arguing that the prior art does not show the particular position of the O-ring; and (4) arguing that replacement of the epoxy seal of the prior art by an O-ring is not what is being claimed, unless the O-ring is provided between a front cap and a rear insert body.

The doctrine of prosecution history estoppel bars a patentee from asserting as an equivalent subject matter surrendered during prosecution of the patent application. *See generally Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1349–50, 63 USPQ2d 1769, 1776–77 (Fed. Cir.2002). While at least one claim limitation at issue here was amended by the examiner during the prosecution of the patent, Arcom does not allege amendment-based estoppel here. Instead it argues that Eagle is estopped under argument-based estoppel. *See Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979, 52 USPQ2d 1109, 1113 (Fed.Cir.1999) (holding that the scope of coverage of the claims may change if a patentee has "relinquished [a] potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference"); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1583, 34 USPQ2d 1673, 1682 (Fed.Cir.1995) ("Clear assertions made during prosecution in support of patentability, whether or not actually required to secure allowance of the claim, may also create an estoppel."). Any argument-based estoppel affecting a limitation in one claim extends to all claims in which that limitation appears. *Id.* at 1584, 34 USPQ2d at 1683 ("Once an argument is made regarding a claim term so as to create an estoppel, the estoppel will apply to that term in other claims."). To invoke

argument-based estoppel, the prosecution history must evince a "clear and unmistakable surrender of subject matter." *Pharmacia & Upjohn*, 170 F.3d at 1377, 50 USPQ2d at 1036.

After reviewing the entire prosecution history here, we do not find the required clear and unmistakable surrender of subject matter to invoke prosecution history estoppel. While Eagle repeatedly distinguished the prior art by noting that the claimed seal was located between the front cap and the rear insert body, its arguments were not based on the fact that the claimed collet assembly was made of two pieces or were separable. Rather, those arguments were based on the prior art not teaching or suggesting the use of a seal at the interface between the collet assembly and the filter housing. The '494 patent acknowledges that the prior filter and collet assemblies applied sealant to the rear portion of the collet assembly. The improvement of the '494 patent provides a collet that self-seals at the interface between the collet assembly and the filter housing, as opposed to the rear of the collet assembly. Eagle's repeated references to the location of its seal were attempts to distinguish the claimed seal location from the location found in the prior art. Eagle's use of the specific claim language to define further the location of the claimed sealant does not amount to a surrender of seals located elsewhere along the interface between the collet assembly and the filter housing. Thus, the district court erred by holding that prosecution history estoppel barred Eagle from asserting infringement under the doctrine of equivalents.

### 2. All-limitations Rule

Because the district court found no infringement under the doctrine of equivalents based on prosecution history

estoppel, it did not address Arcom's alternative noninfringement arguments based on the all-limitations rule. Likewise, the district court did not construe the claim terms that Arcom argued would be vitiated in the absence of the all-limitations rule. This court nevertheless has jurisdiction to consider this alternative argument because the record on this issue was fully developed and argued for purposes of summary judgment before the district court. *See Banner v. United States,* 238 F.3d 1348, 1355 (Fed.Cir.2001).

■ The claims at issue in this case require that the collet assembly comprise a front cap, a rear insert body, and a seal located between the front cap and rear insert body. The accused devices in this case do not have separate elements corresponding to the front cap and rear insert body limitations. Accordingly, Eagle does not allege literal infringement. Eagle argues that a finding of infringement under the doctrine of equivalents would not vitiate a claim limitation because one-to-one correspondence of components is not required, and Arcom's one-piece collet assembly is otherwise equivalent to a collet assembly with a front cap and a rear insert body. Arcom argues that the all-limitations rule requires that the accused device contain (1) an equivalent for the claimed front cap, (2) an equivalent for the claimed rear insert body, and (3) an equivalent for the claimed seal located between the front cap and the rear insert body. The issue here is whether Arcom's one-piece collet assembly with a seal located along its periphery can be insubstantially different from a collet assembly comprised of a front cap, a rear insert body, and a seal located between the two, without violating the all-limitations rule. Based on the record before us, we hold that the all-limitations rule does not prevent a finding of infringement under the doctrine of equivalents.

■ While a claim limitation cannot be totally missing from an accused device, whether or not a limitation is deemed to be vitiated must take into account that when two elements of the accused device perform a single function of the patented invention, or when separate claim limitations are combined into a single element of the accused device, a claim limitation is not necessarily vitiated, and the doctrine of equivalents may still apply if the differences are insubstantial. *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1332, 57 USPQ2d 1889, 1900 (Fed.Cir.2001) (citing *Dolly, Inc. v. Spalding & Evenflo Companies, Inc.,* 16 F.3d 394, 398, 29 USPQ2d 1767, 1769–70 (Fed.Cir.1994)). Thus, Eagle is correct that "one-to-one correspondence of components is not required," and the all-limitations rule does not preclude a finding of equivalents here. *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.,* 149 F.3d 1309, 1320, 47 USPQ2d 1272, 1280 (Fed.Cir.1998). Whether, as Eagle argues, Arcom's one-piece collet assembly is insubstantially different from the claimed collet assembly is a question of fact, the resolution of which requires a traditional infringement analysis. *DeMarini Sports,* 239 F.3d at 1330–32, 57 USPQ2d 1899, 1900. Here, the district court did not conduct the first step of that analysis construing the disputed claim language. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (*en banc*), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996). We, therefore, cannot affirm the grant of summary judgment of noninfringement under the doctrine of equivalents under any alternative theory urged by Arcom.

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's finding that Eagle and

its counsel did not violate the protective order in this case and remand the case for the district court to impose an appropriate sanction. Furthermore, we vacate the grant of summary judgment of noninfringement and remand the case for resolution of disputed factual issues.

*REVERSED–IN–PART, VACATED–IN–PART, AND REMANDED.*

### COSTS

No costs.