LION RAISINS, INC., Plaintiff,

v.

**The UNITED STATES, Defendant.**

Nos. 01–322C, 01–536C.

United States Court of Federal Claims.

March 17, 2005 [1].

---

1. This order originally entered on February 24, 2005, and is being reissued for publication at plaintiff's request.

Brian C. Leighton, Clovis, CA, for plaintiff.

John H. Williamson, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant.

***ORDER IMPOSING SANCTIONS FOR VIOLATION OF PROTECTIVE ORDER ENTERED IN CONNECTION WITH APPLICATION FOR ATTORNEYS' FEES AND EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT***

CHRISTINE ODELL COOK MILLER, Judge.

A hearing was held on February 10, 2005, *pursuant to an order entered on February 5, 2005, requiring defendant to show cause why sanctions should not enter against the United* States, defendant—acting through the United States Department of Justice ("DOJ") and the United States Department of Agriculture (the "USDA")—for violation of the Protective Order entered by the undersigned on November 22, 2002. A copy of the protective order is attached as Appendix A hereto, and a copy of the order to show cause is attached as Appendix B.

The Protective Order required the designation as "confidential" and the filing under seal of all documents, including depositions, transcripts, and references to deposition testimony, produced by plaintiff to DOJ in the limited discovery allowed to DOJ in connection with an application filed under the Equal Access to Justice Act, 28 U.S.C. § 2412 (2002) (the "EAJA"). Protective Order ¶ 2. The Protective Order bound the attorneys of record[2] and the USDA attorneys "directly involved in consulting for or advising the attorneys for the United States with respect to plaintiff's" EAJA application. Protective Order ¶ 4(2). The Protective Order expressly provided that the termination of the EAJA proceeding did not "relieve the parties from the obligations of maintaining the confidentiality of all documents, materials, and information deemed confidential and subject" thereto. *Id.* ¶ 8. The Protective Order required that, "[u]pon termination of this litigation [the EAJA proceeding]," all documents subject thereto were to be returned to counsel for the producing party, unless the parties agreed in writing to another manner of disposition. *Id.* ¶ 7.

In finding the relevant facts and entering this order imposing sanctions, the undersigned refers to attorneys employed by DOJ and the USDA as "DOJ # 1," for the attorney who was attorney of record in Docket Nos. 01–322C & 01–346C before the undersigned until John H. Williamson entered his appearance on January 7, 2005; and "USDA # 2," for the attorney in the USDA's Office of General Counsel who both consulted with DOJ # 1 in responding to the EAJA application and (1) currently advises the USDA

---

2. Although DOJ is not named as the attorney appearing for the Government, DOJ appears for the United States by authority of 28 U.S.C. § 516 (2002), and the Protective Order by its terms binds "attorneys of record" and "the attorneys for the United States." The USDA is named in the Protective Order. *See* Protective Order ¶¶ 4(1), 4(2).

deciding official in the debarment proceeding and (2) advised the USDA decisionmaker in the suspension proceeding [3] referred to herein.[4]

On November 14, 2002, over plaintiff's strenuous objection, defendant obtained an order allowing it to engage in limited discovery to determine whether plaintiff met the jurisdictional requirements to qualify for an award of expenses under the EAJA.[5] Defendant obtained from plaintiff documents and depositions that were subject to the Protective Order. Proceedings before the undersigned terminated on August 20, 2003, upon the filing of an opinion denying plaintiff's EAJA application. *See Lion Raisins, Inc. v. United States,* 57 Fed.Cl. 505 (2003). Defendant dismissed its appeal from this order.

Subsequently, on September 20, 2004, plaintiff filed in the United States Court of Federal Claims a complaint for injunctive relief, coupled with a motion for temporary restraining order and motion for preliminary injunction. This action was docketed as No. 04–1477C and assigned to the Hon. George W. Miller. In its 2004 action, plaintiff challenged the USDA's November 19, 2004 decision suspending it from bidding for one year on government contracts pending resolution of an ongoing criminal investigation by the USDA and an ongoing administrative debarment proceeding conducted by a USDA administrative law judge ("ALJ") regarding alleged violations of inspection and grading regulations.

A debarment proceeding involving plaintiff[6] was pending in the USDA during 2004. It charged that plaintiff, by respondent officers, altered or forged inspection certificates. Plaintiff moved for summary judgment contending that the USDA had failed to sustain its burden of proof. In support of its argument that two of the named respondents

**3.** Debarment proceedings in this matter have not been completed and are ongoing. The suspension was a separate proceeding.

As agencies are required to do business only with responsible contractors, 48 C.F.R. § 9.402 (2005), suspension and debarment sanctions serve as methods to enforce the USDA's regulations covering contracts. Contractors who are suspended or debarred are "excluded from receiving contracts, and agencies shall not solicit offers from, award contracts to, or consent to subcontracts with these contractors." *Id.* § 9.405(a). Suspension of a contractor is employed when "immediate action is necessary to protect the Government's interest[,]" 48 C.F.R. § 9.407–1(b)(1), and is for a temporary period. *Id.* § 9.407–4(a). Causes for suspension include suspicion or adequate evidence of, *inter alia,* commission of fraud or a criminal offense in connection with performance of a public contract, violation of federal or state antitrust laws in relation to the submission of offers, embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, or receiving stolen property. *Id.* § 9.407–2(a)(1)–(7). A debarment period does not normally exceed three years and is commensurate with the seriousness of the cause. *Id.* § 9.406–4. Causes for debarment are generally the same as those for suspension, except that debarment occurs when a contractor has been convicted of, or had civil judgment entered against him for, the infractions listed. *Id.* § 9.406–2.

**4.** Defendant states that USDA # 2 "represents [the] USDA in administrative proceedings to debar Lion that are ongoing." Declaration of John H. Williamson, Jan. 6, 2005, ¶ 2. Plaintiff states that USDA # 2 is the prosecutor representing the USDA in the debarment proceeding and represents the deciding official Dr. Kenneth C. Clayton on the suspension issue. *See* Decl. of Brian C. Leighton, Dec. 21, 2004, ¶ 3. The undersigned has taken pains to discuss only those facts that are both uncontroverted and critical to the sanctionable conduct. In fact plaintiff has named another DOJ attorney, USDA attorneys, an investigator, and Mr. Williamson. The court finds that Mr. Williamson was not involved in the actions that violated the Protective Order.

**5.** On November 1, 2002, defendant moved for limited discovery in the EAJA proceedings. Plaintiff opposed the motion. After briefing was completed, plaintiff tendered Plaintiff's Proposed Stipulation and Protective Order, signed by plaintiff's counsel, but not by defense counsel. Defendant on November 20, 2002, moved to strike plaintiff's proposed protective order. The court granted the requested discovery on November 22, 2002, and on the same date entered the Protective Order. The form of the Protective Order, which was not as broad as the one proposed by plaintiff, responded to certain of defendant's concerns and delimited the order's scope to the limited EAJA proceeding. Defendant is correct that plaintiff's principal concern, as expressed in its briefs and as evidenced by the order that it tendered, was protection of confidential financial information. The Protective Order entered was not the "stipulated" order proffered by plaintiff.

**6.** Lion Raisins Company and Lion Packing Company also were named.

were not officers of plaintiff until after 2000, plaintiff and its individual respondent officers on April 2, 2004, submitted a joint reply in support of their motion for summary judgment in the debarment proceeding, *In re Lion Raisins, Inc.*, I & G Docket No. 01–0001 (USDA) (Apr. 5, 2004). This submission included a March 30, 2004 declaration of plaintiff's Controller, attached to which were the minutes of annual meetings of plaintiff's Board of Directors dated January 4, 2000, January 4, 2001, and January 4, 2002.

Thereafter, on April 23, 2004, USDA # 2, who is the prosecutor representing the USDA in the debarment proceeding before the ALJ, "orally made direct representation to [the ALJ] making direct reference to [DOJ # 1] regarding corporate meeting minutes she received from him, and deposition testimony taken in that EAJA case." Declaration of Brian C. Leighton, Dec. 21, 2004, ¶ 3. The inference can be drawn that USDA # 2 gave the ALJ the documents, because they are referred to as the first ground relied upon to sustain plaintiff's proposed suspension.

Prompted by disclosure of the minutes, the USDA issued a four-page letter dated September 13, 2004, signed by Kenneth C. Clayton, Suspending Official, Agricultural Marketing Service ("AMS"). The proposed suspension of plaintiff for one year from bidding on government contracts was based on two grounds, as follows:

> AMS has reason to believe that Lion Raisins, Inc., submitted false evidence to the Secretary of Agriculture and/or to the U.S. Department of Justice.
>
> . . . .
>
> AMS has reason to believe that Lion Raisins, Inc., has repeatedly engaged in misrepresentation or deceptive or fraudulent practices or acts in connection with the use of inspection certificates, with the use of a legend signifying that raisins had been officially inspected, and with the use of a facsimile form simulating official inspection certificates.

Decision Letter from Kenneth C. Clayton, Suspending Official to Alfred Lion, Jr., dated Sept. 13, 2004, at 1–2 (emphasis omitted). Although plaintiff relied on the minutes dated January 4, 2000, to show the USDA that two of the named respondents were not officers, Dr. Clayton states that the respondents (including plaintiff) in 2003 submitted to the DOJ the documents that "also purported to be the official corporate minutes of the annual meetings of the board of directors of Lion Raisins, Inc., which documents Lion Raisins, Inc., asserted were evidence of the identity of its corporate officers. AMS has reason to believe that one of both sets of documents provided to the Federal Government is false." *Id.* at 1.

In its motion for an order to show cause, plaintiff asserts that the USDA cited to and relied expressly on documents subject to the Protective Order-in particular, corporate minutes of the annual board of directors' meetings of plaintiff, Lion Raisins, Inc., dated January 4, 2000; January 4, 2001; and January 4, 2002, that had been produced during DOJ proceedings pursuant to the Protective Order. Plaintiff, however, did not seek to invoke the Protective Order after the September 13, 2004 notice of proposed suspension letter issued. Indeed, on or about May 11, 2004, plaintiff submitted to the USDA a pleading captioned "Respondents' Response to Complainant's Oral Claim That Respondents[ ] Filed False Documents with the Court." This pleading attached a supplemental declaration of plaintiff's Controller explaining the discrepancy between the two versions of the minutes for January 4, 2001.

Upon plaintiff's objection to the suspension, and after a meeting on the record was conducted on November 3, 2004, Dr. Clayton issued a final decision of 102 pages dated November 19, 2004, that suspended plaintiff from contracting for an indefinite period, not to exceed one year. This decision recites:

> 3. On April 5, 2004, Lion Raisins filed a brief with the Secretary of Agriculture in *In re Lion Raisins, Inc.* I & G Docket No. 01–0001, stating that "Jeff and Dan Lion did not become officers of Lion Raisins, Inc. until January 4, 2001," and seeking an order dismissing the administrative complaint as to Jeff Lion and Dan Lion. In support, Lion Raisins attached copies of what is identified as the minutes of its

annual board of directors' meetings for 1996 through 2002.

. . . .

4. Lion Raisins has previously represented to the Secretary, to the DOJ and to the Raisin Administrative Committee ... that Jeff Lion and Dan Lion *were* corporate officers before 2001. Specifically, in March 2003, Lion Raisins produced copies of minutes of its annual board of directors' meetings dated January 4, 2000, January 4, 2001, and January 4, 2002, to the DOJ. According to these minutes, Lion Raisins elected Jeff Lion and Dan Lion as vice presidents in 2000 and 2002, but not in 2001.

*In the Matter of Lion Raisins, Inc.,* at 13, 15 (USDA) (Nov. 19, 2004) (footnotes omitted). The decision refers repeatedly to the submission of these minutes to the DOJ, as well as to certain deposition testimony that also was taken in the EAJA proceeding and subject to the Protective Order. *See id.* at 15 n. 14.

In his declaration submitted in support of plaintiff's motion for order to show cause, which originally was filed in the proceeding before Judge G. Miller, plaintiff's counsel avers:

4. On or about November 19, 2004 I received a copy of Dr. Clayton's decision and what I referred to in the motion as DOJ/USDA's cherry picked Administrative Record which consists of one volume, Exhibit "1" of which includes the corporate minutes we provided to [DOJ # 1] pursuant to the Protective Order. I noted in Dr. Clayton's decision and order numerous references to not only those corporate meeting minutes but also deposition pages that were also taken under the Protective Order. On the day after Thanksgiving, November 26, 2004[,] I received nine more volumes of the "Administrative Record"

from Mr. Williamson's office which included in Volumes 15 and 16 virtually all documents, including tax returns, profit and loss statements, asset lists, etc. that Lion provided to [DOJ # 1] in that protective order case, under the Protective Order. That means that not only did [DOJ # 1] not return the original and copies that Judge Christine Miller ordered him to return, but that USDA was in possession of all of those protected records which they included as part of the "Administrative Record". I also noted with respect to those exhibits in Volumes 15 and 16, page numbers identified in Lion's instant motion, that each exhibit was a document that [DOJ # 1] supposedly filed "under seal", because it lists his exhibit number as well as that Court of Claims case number. I and Lion Raisins, Inc. are livid that DOJ and USDA not only did not comply with the Protective Order, they actually flaunted it by using the information in the current suspension, and including all of the materials in the Administrative Record that was required to be returned when the Judge Christine Miller case was terminated in August of 2003.

Leighton Decl. ¶ 4.[7]

On September 20, 2004, plaintiff filed its injunctive action challenging the final suspension decision. In connection with that action, plaintiff filed on December 7, 2004, a motion to strike portions of the Administrative Record. Judge G. Miller stated in the transcript of argument held on December 21, 2004, that he "will deny" the motion because plaintiff waived invoking the Protective Order by filing the minutes in its effort to defend against the complaint in the debarment proceeding before the USDA. Transcript of Proceedings, *Lion Raisins, Inc. v. United States,* No. 04–1477C, at 4 (Fed.Cl. Dec.21, 2004).[8]

---

**7.** Plaintiff submitted this declaration as an exhibit to its motion for an order to show cause.

**8.** Judge G. Miller has not entered an order denying the motion to strike. The undersigned has conferred with Judge G. Miller about the instant motion and its ramifications to the case pending before him. Judge G. Miller and the undersigned agreed that the undersigned should rule on whether the challenged conduct violated the Protective Order. "A district court has great

discretion when deciding how to enforce violations of its own orders." *Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc.,* 305 F.3d 1303, 1314 (Fed.Cir.2002) (citing *Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 428, 43 S.Ct. 458, 67 L.Ed. 719 (1923) (stating that court whose "dignity has been offended and whose process has been obstructed" has discretion to impose punishment)).

On December 20, 2004, plaintiff had filed its motion with the undersigned, as the judge who issued the Protective Order, for an order to show cause why sanctions should not be imposed for violations of the order. Also on December 20, 2004, Mr. Williamson sent to plaintiff's counsel all originals and copies of the documents produced by plaintiff in response to DOJ's discovery requests in the EAJA proceeding-except for the corporate minutes. Defendant filed its response to plaintiff's motion before the undersigned on January 10, 2005. After briefing on the motion for an order to show cause was completed on January 26, 2005, this court issued an order on February 3, 2005, granting plaintiff's motion and requiring defendant to show cause at a hearing why sanctions should not be imposed for violation of the Protective Order. The parties were heard on February 10, 2005.

Defendant does not dispute that the USDA proposed suspension decision and final suspension decision identify, refer to, and rely on the minutes and related deposition testimony, or that they are subject to the Protective Order, or that they were provided to two USDA attorneys, one of whom is USDA # 2 and who was one of the USDA attorneys who advised DOJ # 1 in the EAJA proceeding, *see* Declaration of DOJ # 1, Jan. 4, 2005, ¶ 3. Although Mr. Williamson submitted a declaration relating factual assertions of USDA # 2 concerning this matter, the court does not credit the hearsay statements, but does accept Mr. Williamson's statement of operative facts or admissions, if they be construed as such. Mr. Williamson declares:

> 5. I understand from [USDA # 2] that during an April 23, 2004 hearing in the debarment proceeding, she alerted [the ALJ] that the [2000] corporate minutes attached to the [Controller's first declaration] were different from the version of the [2000] corporate minutes that Lion produced to the Government in 2003 during the 01–322C bid protest.

Williamson Decl. ¶ 5. Moreover, Mr. Williamson's December 20, 2004 letter to plaintiff's counsel states, as follows:

> We are returning the enclosed documents that are covered by the protective order in the 01–322C bid protest (Judge Christine Miller). As we stated we would do in my letter to Brian Leighton dated, December 10, 2004, we are returning what I believe to be all originals and copies of the documents produced by Lion in response to the Government's discovery requests in the 01–322 suit, except for the corporate minutes. I have reviewed all files from the 01–322C suit in the Department of Justice archives, and requested that the relevant USDA personnel send me all their copies of Lion documents that are covered by the protective order. We have not removed the copies of the documents from Volumes 15 and 16 of the USDA suspension proceeding administrative record, in the event that the Court directs us to file that record.
>
> Enclosed are the originals and 3 sets of copies of the following exhibits from the depositions of Nomie Derderian, Susan Keller, and Bruce Lion, taken on March 11–12, 2003: 1–11, 13–18, 28, and 30.

The letter also lists eighteen original documents, which appear to be financial information, "some of which were used as exhibits," in the administrative proceeding, according to Mr. Williamson's letter.

 The United States Court of Appeals for the Federal Circuit has not addressed the standards governing the authority of the United States Court of Federal Claims to sanction a violation of a protective order pursuant to 28 U.S.C. § 2521(b)(3). However, the Federal Circuit has issued two opinions in which it applied the law of the circuit where the action arose. These two cases enunciate the same standard and constitute, in this court's view, persuasive authority that should be followed. *See Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc.*, 305 F.3d 1303, 1314 (Fed.Cir. 2002). *Eagle* applied the standard of the Second Circuit in *EEOC v. Local 638*, 81 F.3d 1162, 1171 (2d Cir.1996), that a party may be held in contempt only if proved by clear and convincing evidence that the party violated clear and unambiguous order of the court. *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir.1995), applied the same standard that the party asserting violation of

protective order, as a form of civil contempt, must prove the violation by clear and convincing evidence. The Federal Circuit also mentioned the Second Circuit's caveat that a violation need not be willful, but that it must be demonstrated that "the contemnor was not reasonably diligent in attempting to comply." *Eagle,* 305 F.3d at 1314 (quoting *United States v. Local 1804–1,* 44 F.3d 1091, 1096 (2d Cir.1995)) (internal quotations omitted).

■ Not disputing that protected material was disclosed, defendant makes the following arguments, which the court addresses, in turn:

1. The USDA was not required to seek relief from the Protective Order because plaintiff had tendered to the USDA, in connection with the debarment proceeding, versions of its corporate minutes that could be false versions of documents previously provided to DOJ in the EAJA proceeding.

The glibness of this argument belies its validity. When USDA # 2 recalled that the USDA had in its possession a different version of the minutes, the USDA, through DOJ, could have sought relief from the Protective Order. The court agrees with defendant that, in acting on its awareness of the discrepant minutes by divulging their existence, USDA # 2 did not violate the Protective Order. What does constitute violative conduct, however, was Dr. Clayton's issuing the proposed suspension decision that relied on the discrepancy in the different versions of the minutes. Either the DOJ or the USDA could have sought to modify the Protective Order or to subpoena plaintiff for the "altered" version of the corporate minutes without the USDA's arrogating to itself the right to use the protected material in an enforcement proceeding. This argument amounts to the disappointing incantation that the ends justify the means.

The court gives this argument the light touch that it deserves. Defendant cites no case law or other authority to support it. Mr. Williamson had suggested in an earlier letter of December 10, 2004, to plaintiff's counsel that plaintiff could file under seal any documents that it deemed to be confidential that had been included in the administrative record to be filed in the court proceeding before Judge G. Miller. Defendant does not appear to appreciate that the Protective Order prevented the inclusion of protected material in the record of any USDA proceeding, unless plaintiff had agreed in writing that the USDA could make such use of it.

Enforcement of protective orders implicates the rule of law. If, for example, the Government were allowed to use what turns out to be a draft of a document in its possession that was under a protective order against a party who submits in a second proceeding what appears to be another, but critically different, final version, the door would be open to conduct that erodes and undermines the protections that a protective order puts in place. This court will not condone such conduct.

2. Defendant argues that both Mr. Leighton and his co-counsel in the USDA debarment proceeding waived use of the protected material by failing timely to object to it (in April 2004) and later by stating on the record and in correspondence that they realized that the material was protected, but were not going to make an issue of its disclosure. Another argument is more convoluted: Because plaintiff submitted one version of the minutes to DOJ in the EAJA proceeding, but relied on another version in the debarment proceeding, plaintiff waived its right to object to the disclosure of the minutes that were subject to the Protective Order. Thus, defendant argues that plaintiff waived any protection afforded by the Protective Order by (1) failing timely to object to disclosure of the protected documents, including deposition references and/or (2) by expressly waiving any protection.

Mr. Leighton states in his declaration that plaintiff only was made aware by the September 13, 2004 suspension letter that Dr. Clayton relied on the minutes, the deposition references, and other protected material. Defendant rejoins that plaintiff neither asserted during the April 24, 2004 evidentiary meeting nor in its May 10, 2004 response that USDA # 2 had violated the Protective Order "by alerting [the ALJ] to the discrepancy between the two different versions of the [2000] corporate minutes." Williamson

Decl. ¶ 7. Defendant also points to statements made by plaintiff's counsel in the suspension proceeding and in correspondence to the effect that plaintiff did not object to use of certain materials that did not constitute confidential financial information, that plaintiff was interested only in protecting such information,[9] and that plaintiff would not object to technical violations of the Protective Order.

The court finds that plaintiff waived its right to object to disclosure of the corporate minutes that were subject to the Protective Order by submitting the same minutes in the USDA debarment proceeding. The court makes this finding reluctantly in view of the clear and convincing evidence that the USDA availed itself of the use of these minutes and both related and unrelated protected material. However, plaintiff elected to attempt to explain the discrepancies in the debarment proceeding (through a second declaration of its Controller) instead of seeking to enforce the Protective Order.

Despite this waiver with respect to some of the protected material, the court finds that plaintiff did not waive its right to seek enforcement of the Protective Order by waiting until the suspension decision issued on November 19, 2004, in order to ascertain the extent of the use of protected material as a basis for the suspension. Nor did statements of its counsel waive plaintiff's right to protest use of protected material, because, as Mr. Leighton explains in his unrebutted sworn declaration, he and his co-counsel were discussing materials that were not subject to the order, the Protective Order covered more than financial materials, and plaintiff was not aware of the extent to which Dr. Clayton had relied on protected materials until the final suspension decision issued.

Although plaintiff waived its right to object to the USDA's use of impeaching corporate minutes because it had tendered what was represented to be those minutes to defend itself in the debarment proceeding, defendant does not argue that this disclosure alone allows the USDA to rely on all the other protected material that has been disclosed. Disclosure of the other protected material was prohibited.

3. Defendant argues that, while the Protective Order limited access to attorneys who were consulting or advising DOJ attorneys concerning the EAJA application, the order did not limit use of the protected material to the EAJA proceeding. Even conceding that the Protective Order did not contain an express restriction on use by covered persons and further assuming that the covered USDA attorneys and the USDA investigator could have used the protected material as they saw fit, the period of free reign ceased, per the express provisions of the Protective Order, when the EAJA litigation terminated before the undersigned on August 20, 2003.

4. Defendant argues that DOJ complied with the Protective Order because Mr. Williamson returned, exclusive of the corporate minutes, the remainder of the protected documents, and all copies, on December 20, 2004. Defendant also moved on January 10, 2005, in connection with responding to plaintiff's motion for order to show cause, for an order amending the Protective Order to exempt the subject corporate minutes.

Defendant cannot seriously argue that belated compliance with the Protective Order and its *post facto* effort to except the minutes from its protection constitute good-faith compliance. But it does. Remarkably, defendant quotes the language of the Protective

9. Paragraph 3 of the Protective Order provides in full:

3. If any document described herein is used during the course of depositions herein, that portion of the deposition record reflecting said information shall be sealed and stamped as "confidential" and access thereto shall be limited pursuant to the other terms of this protective order, and any portion of the deposition responsive to questions regarding plaintiff's net worth, its financial statement, profit and loss statements, or requiring the disclosure of

any financial information, or number of employees, shall likewise be deemed confidential with said portion of the deposition transcript being stamped as "confidential" and access thereto shall be limited pursuant to the other terms of this protective order.

Protected material, however, was not limited to financial information. Defendant obtained corporate minutes in response to the discovery that was allowed subject to the Protective Order. Paragraph 2 of the Protective Order covers all documents produced.

Order that, because the parties can agree to disposition other than return of the documents, in effect, DOJ was relieved of its obligation to return the documents at the termination of the EAJA proceeding when plaintiff did not request their return. This argument insults the Protective Order. The order requires that DOJ return the protected materials to plaintiff unless plaintiff agreed in writing to another disposition.

The court is aware that defendant challenges the court's jurisdiction in the proceeding before Judge G. Miller. The order to show cause issued by the undersigned stated:

The parties shall be prepared to address whether the undersigned can preclude the United States Department of Justice and the United States Department of Agriculture from relying on any documents that have been disclosed in a subsequent administrative or judicial proceeding.

Order entered Feb. 3, 2005, at 2. Defendant did not comment on this proposed sanction.

5. Finally, defendant seeks absolution in ignorance: During argument before the undersigned, counsel stated that "[USDA # 2] was not aware of the existence of the protective order." Transcript of Proceedings, *Lion Raisins, Inc. v. United States,* Nos. 01–322C & 01–536C, at 43 (Fed.Cl. Feb. 10, 2005). What an astonishing declamation! Applying the standard that a violation of a protective order must be established by clear and convincing evidence, the court finds that DOJ # 1 did so by not monitoring the client agency's use of documents subject to a protective order; DOJ did so by not returning the protected material upon the termination of the EAJA proceeding; and USDA # 2 and

the USDA did so by using protected material in the proposed and final suspension decisions. The conflicting renditions of defendant, DOJ # 1, and USDA # 2 as to whether the USDA was aware that the material was subject to the Protective Order need not be resolved. Defendant represented at the contempt hearing that USDA had custody of the documents, which is borne out by the citations in the final suspension decision and the citations to the USDA's administrative record.[10]

This court previously denied defendant's motion to amend the Protective Order *nunc pro tunc* as exquisitely untimely in the circumstances of this case. Order entered Feb. 3, 2005, at 2. The Protective Order was clear and unambiguous with respect to the provisions that were violated, and the record demonstrates clear and convincing evidence to support a finding that the United States, through the DOJ, the USDA, DOJ # 1, and USDA # 2, willfully violated the Protective Order by disclosing protected material, other than the corporate minutes and related deposition testimony. The contemnors also violated the Protective Order by failing to return to plaintiff the protected material upon the termination of the EAJA litigation.[11]

Accordingly, based on the foregoing:

**IT IS ORDERED,** as follows:

1. The court directs that a contempt citation shall issue.

2. The United States Department of Justice and the United States Department of Agriculture and their officers, agents, and employees may not make use, in any admin-

---

10. One also notes a discrepancy between DOJ # 1 and the current attorney of record, Mr. Williamson. Whereas DOJ # 1's declaration states that he sent only minutes and depositions to USDA # 2, Mr. Williamson's December 20, 2004 letter records that he obtained all the documents that he was returning from the USDA.

11. Defendant relies on *Navajo Nation v. United States,* 46 Fed.Cl. 353 (2000), which holds that disclosure of protected material shall be evaluated on a *de minimis* basis. That case involved one protected document that a third party had put on the record subject to a protective order during proceedings before the Court of Federal Claims. Thereafter, plaintiff filed the document

in another court under seal as an attachment to a complaint against the third party. While the court in *Navajo Nation* quoted one provision of the protective order that was violated, it found the disclosure *de minimis* in view of its determination that the filing of a sealed complaint, containing the protected document, was an effort in good faith to comply with the protective order. According to the court, this type of use is minimal because the contents of such a complaint are not disclosed and the document at issue is "used." *See id.* at 361.

This court respectfully disagrees with the result and application of a *de minimis* standard in *Navajo Nation.*

istrative or judicial proceeding conducted after this date, pending or newly initiated, of any material that plaintiff submitted to the DOJ during 2003 pursuant to and subject to the Protective Order. This order does not apply to the corporate minutes that were appended to the first declaration of its Controller submitted to the USDA (Declaration of [Controller] in Support of Respondents Al Lion Jr., Jeff Lion, and Dan Lion's Motion for Summary Judgment, Mar. 30, 2004, filed in *In re Lion Raisins, Inc.*, I & G Docket No. 01–0001 (USDA) (Apr. 5, 2004)), or the deposition testimony cited in the USDA's suspension decision of November 19, 2004.

3. A copy of this order was transmitted to counsel this date by facsimile transmission.

## *ORDER*

Defendant on November 1, 2002, filed Defendant's Motion for Limited Discovery Related to Plaintiff's Motion for Attorneys' Fees Under the Equal Access to Justice Act and Request for Expedited Consideration. Pursuant to the order entered on November 2, 2002, briefing was expedited. The court's chambers also telephonically advised the parties that the judge was holding trial out of the country and would be unable to rule on the matter until the week of November 18, 2002, and suggested that counsel submit a proposed protective order in the interim. Plaintiff filed its response to the discovery motion on November 5, 2002, and defendant replied on November 6, 2002. Plaintiff also filed Plaintiff's Proposed Stipulation and Protective Order on November 14, 2002, which defendant moved to strike on November 20, 2002, and plaintiff replied thereto. After a review of the briefs, the court deems that limited discovery is called for on condition that a protective order should enter. Accordingly,

**IT IS ORDERED,** as follows:

Defendant's motion for limited discovery is granted to the extent that all discovery in connection with plaintiff's application for attorneys' fees shall be completed by February 28, 2003, and is subject to the protective order attached hereto.

## APPENDIX A

### *PROTECTIVE ORDER*

1. The Government contends that it needs to engage in limited discovery to determine whether or not plaintiff qualifies under the Equal Access to Justice Act (the "EAJA"), *i.e.*, to determine whether or not plaintiff's net worth at the time that the complaint was filed was more or less than $7 million, and/or whether or not plaintiff, at the time the complaint was filed, employed more or less than 500 employees.

2. All of the documents relative to that inquiry by the Government, and produced by plaintiff either through answers to interrogatories, responses to requests for production of documents, requests for admission, or in depositions shall be deemed "confidential" and covered by this protective order.

3. If any document described herein is used during the course of depositions herein, that portion of the deposition record reflecting said information shall be sealed and stamped as "confidential" and access thereto shall be limited pursuant to the other terms of this protective order, and any portion of the deposition responsive to questions regarding plaintiff's net worth, its financial statement, profit and loss statements, or requiring the disclosure of any financial information, or number of employees, shall likewise be deemed confidential with said portion of the deposition transcript being stamped as "confidential" and access thereto shall be limited pursuant to the other terms of this protective order.

4. Documents classified by this order as being "confidential," or abstracts thereto from and the information therein, may be given, shown, made available to, or communicated to only the following:

1) Attorneys of record and employees thereof including associates who are actually engaged in the preparation of the EAJA motion or response; and

2) Employees of the United States Department of Agriculture who are directly involved in consulting for or are advising the attorneys for the United States with respect

to plaintiff's motion for attorneys' fees under the EAJA.

5. Documents, materials, information, interrogatory answers, and depositions shall be stamped "confidential" when filed with pleadings or as evidence, shall be delivered sealed to the Clerk of the Court, and shall not be available for public inspection. Envelopes used to seal such documents shall carry the notations: "Confidential"—"This Document is Subject to a Protective Order Issued by the Court and May Not Be Examined or Copied Except in Compliance with that Order."

6. The terms of this protective order shall apply to all matter and means of discovery, including inspection of books, records, and documents.

7. Upon termination of this litigation, the originals and all copies, whether exact copies or compilations, digests or non-exact copies in any form, of confidential documents, materials and information covered by this protective order, shall be returned to the counsel for the party who produced such documents, materials, and information, or may be disposed of in some other manner that is mutually agreeable among the parties, if evidenced in writing.

8. The termination of proceedings in this action shall not thereafter relieve the parties from the obligations of maintaining the confidentiality of all documents, materials, and information deemed confidential and subject to this protective order.

## APPENDIX B

### *ORDER*

Plaintiff moved on December 20, 2004, for issuance of an order to defendant to show cause for violating the protective order entered on November 22, 2002, per "Plaintiff's Motion for the Court to Issue an Order To Show Cause to the Defendant and their Counsel of Record Re violation of the Court Ordered Protective Order." Defendant responded on January 10, 2005, by filing "Defendant's Opposition to Plaintiff's Motion Asserting Violation of Protective Order by Defendant and its Counsel and Cross-motion

To Amend Protective Order." Plaintiff replied on January 12, 2005, and moved for an order allowing it to depose persons in connection with violation of the protective order, per "Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion Asserting Violation of Protective Order by Defendant and its Counsel: and Plaintiff's Opposition to Defendant's Cross–Motion To Amend Protective Order; and Plaintiff's Motion To Depose Persons Relative to the Violation of the Protective Order." On January 26, 2005, defendant filed "Defendant's Reply in Support of its Cross–Motion to Amend Protective Order and Defendant's Opposition to Plaintiff's Motion To Take Depositions. The motion to take discovery has been sufficiently brief, so that a ruling can enter pursuant to RCFC 7.2(a).

Defendant's motion is denied outright. Defendant proffers no plausible justification for requesting that a protective order be amended to exclude a document or documents that were subject to the order after disclosure by United States Department of Agriculture employees and use by third parties. Defendant does not argue persuasively that any comments of plaintiff's counsel made post-disclosure have waived plaintiff's right to object to the use of documents that are subject to a protective order. Defendant has not established that an accepted course of action to gain use of protected materials was other than to seek modification of the protective order before the disclosure was made or to have subpoenaed the documents from plaintiff.

Plaintiff's motion for an order to show cause is granted insofar as defendant shall show cause at a hearing to be held on Thursday, February 10, 2005, at 6:00 p.m. E.S.T. why sanctions should not enter against it for violating this court's protective order. Plaintiff shall notify the court at 202/357–6620 by February 7, 2005, if he wishes to participate by telephone conference call to be placed by the court. Plaintiff's motion to take depositions is denied.

The parties shall be prepared to address whether the undersigned can preclude the United States Department of Justice and the United States Department of Agriculture

from relying on any documents that have been disclosed in a subsequent administrative or judicial proceeding.

A copy of this order was transmitted to counsel this date by facsimile transmission.

**IT IS SO ORDERED.**